Jack B. Wheatland v. Commissioner.
Wheatland v. Commissioner
Docket No. 165-63.
United States Tax Court
T.C. Memo 1964-95; 1964 Tax Ct. Memo LEXIS 243; 23 T.C.M. (CCH) 579; T.C.M. (RIA) 64095; April 13, 1964
*243 Petitioner, a sixth grade science teacher and part-time electronics engineer, purchased with his own funds certain items of electronic equipment which he used at times for demonstration purposes in his classroom and also for his own purposes at home, and three sets of encyclopedias, which he at times made available to his pupils in the classroom and also to his own children at home. Held, petitioner's expenditures for the electronic equipment and books were not deductible either as educational expenses or as ordinary and necessary expenses of petitioner's trade or business. *244 Jack B. Wheatland, pro se, 2445 Marjorie Court, Mountain View, Calif. Leslie M. Hartman, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency in petitioner's income tax for the taxable year 1959 in the amount of $406.78. The issue for decision is whether petitioner may deduct in 1959 the cost of three sets of encyclopedias and of certain electronic equipment which he used from time to time in his classroom as a science teacher in elementary school. Findings of Fact During the year 1959 petitioner and his wife resided in Mt. View, Calif. They filed a joint Federal income tax return for 1959 with the district director of internal revenue, San Francisco, Calif.
In 1959 petitioner was an elementary school teacher in the Sunnyvale School District, Sunnyvale, Calif. He had been a teacher for 11 years. In 1962 petitioner was awarded a lifetime teaching certificate as a general elementary schoolteacher. As a teacher, petitioner's primary interest was in science education. In 1943 he had been a member of the Navy V-12 program, studying engineering and electronics and his duties in the Navy involved *245 navigation. He attended Long Beach City College where his primary fields of study were mathematics and science. In 1950 he received his A.B. degree from College of the Pacific, and in 1960 he began graduate studies in education at Stanford University. He received his M.A. degree from Stanford in 1962 in education. Petitioner began teaching in Redwood City, Calif., in 1952, and he was a teacher in the Sunnyvale school district from 1954 to 1962. During this period he also had other jobs in addition to serving as an elementary schoolteacher. These other jobs involved engineering and electronics. From 1952 to 1954 he worked in San Carlos, Calif., as a technician; in 1955 he worked during the summer vacation in Redwood City, Calif., as a test engineer; from 1956 to 1958 he had a position in Palo Alto, Calif., as a maintenance engineer, and from May 1958 to January 1959 he worked as a technician in a computer laboratory. In January 1959 petitioner obtained a position with Lockheed Aircraft Corporation Missiles and Space Division, hereinafter called Lockheed, as an associate engineer. In 1962 he was employed by Lockheed as an electronic research engineer. His salary from Lockheed in *246 1959 was $6,082.62. Due to his interest in science education, petitioner, in 1959, was a consultant on curriculum for the Sunnyvale school district. In this capacity he advised the superintendent of schools with respect to science curriculum and to the materials to be used in teaching science in the schools. At the elementary school where petitioner taught in 1959 there was a science laboratory library where teaching materials were maintained. Teachers from the elementary school and from nearby junior high schools could use the materials in this library by checking them out for use in the classroom. In 1959 petitioner purchased parts for the assembly of the following items of electronic equipment for which he paid the following amounts: High-frequency crossover network
$ 37.50
Electronic dual sweepscope
370.00
Audio amplifler
85.00
Grid dip oscillator
32.50
Variable oscillator
155.00
Total
$680.00
An oscillator is a device similar to a television screen. It has a picture tube and is used for measuring frequency oscillation and for tuning and adjusting electronic components. Had petitioner purchased the oscillators assembled, he would have been required *247 to pay more for them than he did for the component parts. The oscillators and the audio amplifier were assembled in the classroom. Petitioner bought the parts for the other items in laboratory kit form; that is, the parts were in such form that they could be assembled, dissembled, and reassembled many times. In teaching the children in his classes how to assemble the components, petitioner did not solder permanent circuit connections but used clips so that the circuit could be built and rebuilt. Much of the instruction concerning the assembly and reassembly of the components of the foregoing items had no direct connection with general science courses taught elementary school students; the instruction, which included some explanation of computer mathematics, was part of petitioner's program for enrichment of the more advanced students in science. Petitioner placed the components of the electronic equipment in the science laboratory library at his school, and other teachers from his school and from junior high schools had access to them. On one occasion when he had purchased some equipment at a cost of about $5, he presented the bill to his school for payment, but payment was refused *248 and petitioner had to pay the cost himself. The high frequency crossover network and the audio amplifier can be used by persons, such as petitioner, who are interested in high fidelity phonograph equipment. Petitioner used some of the items at home particularly during summer vacations. In 1962, due to his interest in science education, petitioner was granted a sabbatical leave from his teaching duties in order to pursue graduate work leading to the Ph.D. degree at Stanford University. During this leave of absence, petitioner was to be paid one-half of his usual salary by the school district. At the date of the trial of this case, petitioner was doing graduate work at Stanford University and was the only graduate student at the university working for a Ph.D. degree with study in science education at the elementary level. He planned to do research work for his doctoral thesis in the field of cybernetics. Petitioner was able to obtain a grant from a foundation to defray the costs of his tuition at Stanford because of his interest in science education. When petitioner left Sunnyvale school district to do graduate work, he left most of the electronic equipment in the school science *249 library. Some of the equipment was lost or worn out. But petitioner took the audio amplifier with him for use at home and at the date of the trial still had the amplifier and had added speakers to it. On his return for 1959 petitioner claimed as a deduction from adjusted gross income the above-mentioned cost of the items of electronic equipment. He explained the deduction as "Electronic Test Equipment for Training & Research." Respondent disallowed the deduction in its entirety. In 1959 petitioner had four children, ages 1, 2, 7, and 9. In that year he purchased three sets of encyclopedias, published by different publishers, for a total cost of $473, which could be used in the education of children of elementary school age. The school where petitioner was teaching that year had encyclopedias available for the students in the school library, and the children could use them during library periods. But petitioner felt that his students should have available to them a set of encyclopedias in their own classroom for use whenever they needed them, and he requested that his school purchase enough sets so that each classroom could have a set. His request was denied because encyclopedias *250 were available in the library. Consequently, petitioner used the encyclopedias he purchased in his classroom from time to time, and he left one set at the school when he left on sabbatical leave. He used the other two sets at home and at another school where he has taught since 1959. Petitioner would have bought the encyclopedias for his children had he not been a teacher. Petitioner, on his return for 1959, claimed as a deduction from adjusted gross income the amount of $498, [1] representing "Texts the deduction in its entirety. The expenditures for the books and electronic equipment were not undertaken primarily for the purpose of maintaining or improving skills required of petitioner in his employment or other trade or business; nor were they ordinary and necessary expenses incurred by petitioner in carrying on his trade or business in 1959. Opinion Petitioner represented himself in this proceeding and the only testimony adduced at the trial was his own. It was marked by candor and objectivity, and we believe that it is entitled to *251 considerable weight. We are concerned with the deductibility of certain expenditures that petitioner made in 1959 when he was working as a teacher and as an associate engineer in the amount of $680 for various items of electronic equipment, and in the amount of $473 for three sets of encyclopedias, both of which he used at times in his classroom. Petitioner did not file a brief and we are not certain from his statements made at the trial under just what provision of the law and regulations he claims the deductions, although it would appear that he was claiming them primarily as educational expenses. The amounts were claimed on his return as deductions from adjusted gross income so we assume they were claimed as ordinary and necessary business expenses under section 162(a), I.R.C. 1954, [2] rather & Encyclopedia." Respondent disallowed than expenses deductible by employees in arriving at adjusted gross income as provided in section 62. The burden of proof is, of course, on petitioner to prove that he is entitled to the deductions. Welch v. Helvering, 290 U.S. 111 (1933). *252 Section 1.162-5, Income Tax Regs., deals specifically with the deductibility of educational expenses and represents a more liberal attitude of the Internal Revenue Service with respect to the deductibility of expenditures for education, continuing to recognize, however, that such expenditures must be "ordinary and necessary" expenses within the meaning of the statute. Cosimo A. Carlucci, 37 T.C. 695 (1962). Essentially the regulations provide, in paragraph (a), that a taxpayer's educational expenses are deductible if undertaken primarily for the purpose of (1) maintaining or improving skills required in his employment, or (2) for meeting express requirements - or his employer or of law or regulations - imposed as a condition to the taxpayer's retention of his salary, status, or employment. There is no evidence that the expenditures involved were made for the second purpose mentioned - meeting express requirements - and we do not understand petitioner so to claim. Paragraph (b) of the regulations also provides that expenditures for education are not deductible if they are undertaken primarily for the purpose of obtaining a new or substantial *253 advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. Based on the evidence presented we fail to see how the purchase and use of the electronic equipment could have been undertaken by petitioner primarily for maintaining or improving skills required in his employment, either as a schoolteacher or as an electronic engineer. Petitioner was not required to be skillful in assembling and working with electronic equipment of this sort in his job as a science teacher in the sixth grade - in fact he candidly admitted that the use of this equipment had little if any direct relation to the science he was required to teach. Nor is there any evidence that working with this equipment maintained or improved any skills required of petitioner in his work as an associate engineer at Lockheed. The evidence is more convincing that the primary purpose for which petitioner bought this equipment was to educate himself to use it in connection with his hobby as a hi-fi enthusiast and also possibly to advance himself as a qualified electronics engineer. The purchase and use of this equipment may have been useful *254 to petitioner in preparing himself for a better teaching job, a higher educational degree, and a better job in engineering, but we cannot find that the primary purpose for the expenditure was to maintain or improve skills required of petitioner in the positions he was employed in during 1959. The expenditures for the electronic equipment are not deductible as expenses for education. And we find no relationship between the cost of the three sets of encyclopedias and the maintenance and improvement of skills required of petitioner in his employment. These expenditures are likewise not deductible as expenses of education. Petitioner also suggested that his expenditures for the books and the electronic equipment which he used at times in his teaching were deductible as expenditures for tools used in his trade or business of teaching. We will assume for purposes of discussion that the cost of tools or other articles used by an employee in his employment could under some circumstances be considered an ordinary and necessary expense in carrying on the taxpayer's trade or business, but we cannot find that the expenditures here involved so qualify. Section 1.162-1(a), Income Tax Regs. *255 , provides that business expenses deductible from gross income include expenditures directly connected with or pertaining to the taxpayer's trade or business, and cases such as Commissioner v. Heininger, 320 U.S. 467 (1943), Robert Lee Henry, 36 T.C. 879 (1961), and Alexander P. Reed, 35 T.C. 199 (1960), stand for the proposition that to qualify as ordinary and necessary business expenses, the expenditures must be directly or proximately related to the taxpayer's trade or business, and they must also be both ordinary and necessary under the circumstances. Here we are doubtful that it can be said that the cost of these books and the equipment was either directly or proximately related to, or a necessary expense of, petitioner's job as a schoolteacher - and we certainly cannot find that it was an ordinary expense of that job. However laudable petitioner's motives may have been in making available to his pupils reference books in their homeroom and using electronic equipment to illustrate electronics, petitioner himself admitted that the equipment was not directly related to what he was supposed to teach in the sixth grade, and also that neither *256 the books nor the equipment were necessary to carry out his job. Neither did the school authorities think that they were necessary - at least they refused to pay for them. They may have been helpful to the students and appropriate for use in the classroom and in petitioner's teaching, but there is no evidence that they would enhance petitioner's trade or business - that of teaching school. But it seems to us unquestionable, even if we were to accept the premise that the primary use of these articles was in petitioner's classroom, which we do not, that these were not ordinary expenses of a public schoolteacher. Rather we would think it quite unusual that a public schoolteacher would provide reference books and illustrative equipment for his classroom out of his own funds. Schoolteachers may, at times, do so, but they do not do so ordimarily, even though the result might be to enhance their reputations as dedicated teachers. Compare Welch v. Helvering, supra.The money may be well spent, particularly here where it appears that petitioner kept two of the sets of encyclopedias home for use of his children and used a good part of the equipment at home for his own enjoyment, *257 but it was not an ordinary expense of carrying on petitioner's business, Welch v. Helvering, supra.
Decision will be entered for the respondent. Footnotes
1. No evidence was presented to explain the difference between the $498 claimed on the return and the $473 paid for the encyclopedias.↩
2. All references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩