**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTHONY WALDRIP,
            *Petitioner-Appellant,*

v.

JAMES E. HALL,
            *Respondent-Appellee.*

No. 07-55512

D.C. No.
CV-03-05255-JVS

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted
February 11, 2008—Pasadena, California

Filed November 18, 2008

Before: Stephen S. Trott, Richard R. Clifton, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Clifton

15461

**COUNSEL**

Gail Ivens, Deputy Federal Public Defender, Los Angeles, California, for the petitioner-appellant.

Yun K. Lee, Deputy Attorney General, Los Angeles, California, for the respondent-appellee.

**OPINION**

CLIFTON, Circuit Judge:

In this case we are called upon to apply the Supreme Court's decision in *Evans v. Chavis*, 546 U.S. 189 (2006). Petitioner Anthony Waldrip, a California state prisoner, filed a petition for habeas corpus under 28 U.S.C. § 2254. The district court dismissed the petition as untimely under the relevant statute of limitations, 28 U.S.C. § 2244(d). The key issue is whether Waldrip's state court post-conviction review proceeding should be considered "pending" under 28 U.S.C. § 2244(d)(2) during a period of over eight months between the denial of a habeas petition by a California state court and the filing of a new petition on behalf of the same prisoner in a higher California state court, which was subsequently denied by the state court without comment as to whether it was timely filed. If so, then the limitations period for filing a habeas petition in federal court would not run, or would be tolled, during that time. Applying *Evans*, however, we conclude that a time gap in excess of six months was too long, absent sufficient justification based on unique facts pertaining to the individual petitioner which are not present here. We thus affirm the dismissal by the district court of Waldrip's federal petition as untimely.

## I. Background

Following a bench trial in California state court, Waldrip was convicted of being a felon in possession of a firearm in

violation of Cal. Penal Code § 12021(a)(1), on September 11, 2000.  The trial court found that he had been convicted of at least three prior "strike" convictions and sentenced him to twenty-five years to life in state prison under California's "three strikes" law.  The California Court of Appeal affirmed the conviction on October 16, 2001, and Waldrip did not petition the California Supreme Court for review.

Three separate habeas petitions were subsequently filed on behalf of Waldrip in California state courts, albeit in an unorthodox pattern. On October 31, 2001, Waldrip's appellate counsel filed a habeas petition in the California Court of Appeal, which argued that trial counsel was ineffective for failing to raise a defense of momentary possession. That petition was denied on November 13, 2001 in a reasoned decision.[1]

On March 14, 2002, Waldrip filed *pro se* a second habeas petition in the Los Angeles County Superior Court, arguing that trial counsel failed to raise all applicable defenses and that the "three strikes" sentence violated the Eighth Amendment. That petition was denied on March 28, 2002.

The third habeas petition was filed on December 11, 2002 in the California Supreme Court by Waldrip's appellate counsel.  This petition raised the same argument set forth in the first habeas petition, the one filed with the court of appeal, that trial counsel was ineffective for failing to raise the defense of momentary possession. Waldrip filed a *pro se* supplement to that petition on January 14, 2003, arguing that (1) trial counsel was ineffective for failing to raise a defense and in advising Waldrip to waive a jury trial, (2) his sentence

---

[1]On November 28, 2001, appellate counsel attempted to file a petition for rehearing from the denial of that habeas petition in the same court of appeal. It appears that the petition for rehearing was never actually filed but was instead rejected and returned by the court five days later, on December 3, 2001. The record is not entirely clear on the reason, but those five days are immaterial to the decision in this case, so we have not given further consideration to those events.

violated the Eighth Amendment, and (3) appellate counsel was ineffective for failing to raise certain arguments on direct review. The California Supreme Court denied this third petition without comment or citation on June 18, 2003.

On July 16, 2003, Waldrip constructively filed a federal habeas petition in the district court. The state moved to dismiss the petition as time-barred. After Waldrip filed an opposition arguing that under existing caselaw the various state petitions filed on his behalf entitled him to tolling, the state withdrew the motion and filed an answer instead. After the Supreme Court decided *Evans v. Chavis*, in 2006, however, the state moved for leave to amend its answer and to file a motion to dismiss based on that decision. The district court granted leave to amend and appointed counsel for Waldrip. The state then moved to dismiss Waldrip's federal habeas petition, arguing that it was time-barred. Adopting a magistrate judge's recommendation, the district court granted the motion to dismiss the federal petition as untimely, on March 29, 2007. This timely appeal followed.

## II.   Discussion

### A.   Motion to Amend the Answer

Waldrip argues that the district court abused its discretion by granting the state leave to amend its answer to assert a statute of limitation defense. We disagree.

[1] A party may amend its pleading once within 20 days after a responsive pleading has been served, or if that period has passed, then by leave of the court or by consent of the other party. Fed. R. Civ. P. 15(a). Courts may freely grant leave when justice so requires, and public policy strongly encourages courts to permit amendments. Fed. R. Civ. P. 15(a); *Outdoor Sys., Inc. v. City of Mesa*, 997 F.2d 604, 614 (9th Cir. 1993). The policy of allowing amendments "is to be applied with extreme liberality." *Owens v. Kaiser Found.*

*Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). We review a district court's decision to grant leave to amend an answer for abuse of discretion. *Id.*

**[2]** In determining whether a court abused its discretion in allowing an amendment, "we often consider: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Here, nothing in the record indicates that the state sought the amendment in bad faith or that the amendment would have been futile. Any prejudice Waldrip may have suffered as a result of the amendment was mitigated by the opportunity afforded to him to respond to the amended answer. Further, the state had not previously amended the answer. Thus, whether the district court abused its discretion in granting leave to amend turns on whether the state's motion to amend was unduly delayed.

The district court concluded that "the delay in raising the statute of limitations defense is due to the recent decision in *Evans*, and not due to lack of diligence." Waldrip challenges that conclusion, arguing that Hall should have known when he filed his initial answer that then-existing Supreme Court precedent in *Carey v. Saffold*, 536 U.S. 214 (2002), supported the argument that the federal petition was time-barred.

**[3]** In *Saffold*, the Supreme Court held that, where a state court denies a state habeas petition using the words " 'on the merits,' those words cannot by themselves indicate that the petition was timely." 536 U.S. at 226. The Court noted that a state court may address the merits of a claim even if it was presented in an untimely way when the merits present no difficult issue, where the court wants to identify potential alternative grounds for decision, or where the court wants to explain to a prisoner that his claim failed for substantive reasons, not simply based on some procedural technicality. Because the state supreme court in *Saffold* denied the state

petition by "stating in a single sentence that it did so 'on the merits and for lack of diligence,' " the Court held that those words did not necessarily establish that the state petition was timely. *Id.* at 217-18 & 226.

Waldrip contends that, in light of *Saffold*, the state "knew full well that any decision that (either by express statement as in *Saffold* or by silence) could be construed to be 'on the merits' did not necessarily indicate that the petition was timely filed" and that the state should have known when it filed its initial answer to assert as a defense that the petition was time-barred. But Ninth Circuit cases following *Saffold* reflect that the law then was not so clear as Waldrip now contends. For example, in *King v. Roe*, 340 F.3d 821, 823 (9th Cir. 2003), we cited *Saffold* but nevertheless noted that courts must determine whether a state habeas petition is denied "on the merits" in deciding whether a petition is time-barred or whether the limitations period should be tolled. In *Delhomme v. Ramirez*, 340 F.3d 817, 819-21 & n.2 (9th Cir. 2003), where the state supreme court denied a state habeas petition without comment, we inferred from the court's silence that there was "no indication that any of [the] petitions were untimely" and concluded that tolling was therefore proper. Later, in *Chavis v. LeMarque*, 382 F.3d 921, 926 (9th Cir. 2004), *overruled by Evans v. Chavis*, 546 U.S. 189 (2006), we again ruled that where a state petition was denied on the merits, tolling was appropriate. These cases suggested that tolling the time to file a federal petition was proper where a state court denies a state petition "on the merits" or without comment. After the state filed a motion to dismiss Waldrip's federal petition as untimely, Waldrip responded with an argument to the contrary. At the time, Waldrip appeared to have the better of the argument, and it must be assumed that the district court would have denied the state's motion had it followed existing Ninth Circuit precedent when the motion was originally filed. We cannot fault the state for not pursuing a motion which would have been futile at the time.

**[4]** It was not until *Evans* that the Supreme Court clarified that the Ninth Circuit cases were "not consistent with *Saffold*." 546 U.S. at 197-98. Further, the *Evans* Court expressly addressed the effect of a state court's *silence* as to whether a petition is denied on the merits:

> If the appearance of the words "on the merits" does not automatically warrant a holding that the filing was timely, the *absence* of those words could not automatically warrant a holding that the filing was timely. After all, the fact that the California Supreme Court did not include the words "on the merits" in its order denying Chavis relief makes it *less* likely, not *more* likely, that the California Supreme Court believed that Chavis' 3-year delay was reasonable.

*Id.* at 197 (emphases in original). Given that *Evans* reversed our court in clarifying the effect of the California Supreme Court's unexplained denial of a state habeas petition, the state's decision in this case to move for leave to amend in light of *Evans* was reasonable and not unduly delayed. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (noting that "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading" is "relevant to evaluating" whether the party "unduly delayed in filing their motion"). Accordingly, the district court did not abuse its discretion in granting Hall's motion to amend his answer. *See Bonin*, 59 F.3d at 845.

### B.   Statutory Tolling of the Limitations Period

Waldrip next contends that the district court erred in concluding that his federal habeas petition was time-barred. We review de novo the district court's dismissal of the petition as untimely. *See Shannon v. Newland*, 410 F.3d 1083, 1087 n.3 (9th Cir. 2005); *Delhomme*, 340 F.3d at 819.

**[5]** The Antiterrorism and Effective Death Penalty Act of 1996 "requires a state prisoner whose conviction has become final to seek federal habeas corpus relief within one year." *Evans*, 546 U.S. at 191 (citing 28 U.S.C. § 2244(d)(1)(A)). AEDPA "tolls this 1-year limitations period for the 'time during which a properly filed application for State post-conviction or other collateral review is pending.' " *Id.* (citing 28 U.S.C. § 2244(d)(2)) (ellipses points omitted). An application for post-conviction review is pending "while a California petitioner 'completes a full round of state collateral review,' " *Delhomme*, 340 F.3d at 819 (brackets omitted), including during the "period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law." *Evans*, 546 U.S. at 191 (emphasis in original). In California, "a state prisoner may seek review of an adverse lower court decision by filing an original petition (rather than a notice of appeal) in the higher court, and that petition is timely if filed within a 'reasonable time.' " *Id.* at 192-93. Thus, in California, "[a]s long as the prisoner filed a petition for appellate review within a 'reasonable time,' he could count as 'pending' (and add to the one-year time limit) the days between (1) the time the lower state court reached an adverse decision, and (2) the day he filed a petition in the higher state court." *Id.* at 193.

*Evans* noted that the California Supreme Court had not yet provided "clear direction or explanation . . . about the meaning of the term 'reasonable time' in the present context." *See id.* at 198. But *Evans* also observed that six months appeared to be too long:

> Six months is far longer than the "short periods of time," 30 to 60 days, that most States provide for filing an appeal to the state supreme court. *Saffold,* [536 U.S.] at 219. It is far longer than the 10-day period California gives a losing party to file a notice of appeal in the California Supreme Court, see

Cal.App.Ct. Rule 28(e)(1) (2004). We have found no authority suggesting, nor found any convincing reason to believe, that California would consider an unjustified or unexplained 6-month filing delay "reasonable."

*Id.* at 201 (brackets omitted).

Moreover, in *Evans* the Supreme Court noted that the issue was not purely one of state law:

[I]n *Saffold*, we held that timely filings in California (as elsewhere) fell within the federal tolling provision *on the assumption* that California law in this respect did not differ significantly from the laws of other States, *i.e.*, that California's "reasonable time" standard would not lead to filing delays substantially longer than those in States with determinate timeliness rules. 536 U.S. at 222-223.

546 U.S. at 199-200 (emphasis in original). After making the observation quoted above that the Court did not believe that California would consider a 6-month delay reasonable, the Court in *Evans* went on to say:

Nor do we see how an unexplained delay of this magnitude [(six months)] could fall within the scope of the federal statutory word "pending" as interpreted in *Saffold*.

*Id*. at 201.

[6] Whether based on the Court's expectation of what time delay the California Supreme Court would view as "reasonable" or on its interpretation of the word "pending" in the federal statute of limitations, *Evans* made clear that an unexplained delay of six months between the denial by one California state court and a new filing in a higher California

court was too long to permit tolling of the federal limitations period on the ground that state court proceedings were "pending." That conclusion dooms Waldrip's federal petition.

The critical dates for Waldrip may be summarized as follows:

| | |
|---|---|
| October 16, 2001 | Conviction affirmed by state court of appeal |
| October 31, 2001 | Habeas petition filed in state court of appeal (by Waldrip's state appellate counsel) |
| November 13, 2001 | Habeas petition denied by state court of appeal |
| November 26, 2001 | Conviction final (40 days after conviction affirmed by state court of appeals when no petition for review was filed with state supreme court) |
| March 14, 2002 | Habeas petition filed in state superior court (by Waldrip pro se) |
| March 28, 2002 | Habeas petition denied by state superior court |
| December 11, 2002 | Habeas petition filed in state supreme court (by Waldrip's state appellate counsel) |
| January 14, 2003 | Supplement to habeas petition filed in state supreme court (by Waldrip pro se) |

| June 28, 2003 | Habeas petition denied by state supreme court |
| July 16, 2003 | Habeas petition deemed filed in federal district court |

The California Court of Appeal affirmed Waldrip's conviction on October 16, 2001. Waldrip did not petition the California Supreme Court for review, and his conviction became final forty days later, on November 26, 2001.[2] Waldrip therefore had one year from that date to file a federal habeas petition. *See Evans*, 546 U.S. at 200. Waldrip did not file his petition in district court until July 16, 2003, one year and 233 days after his conviction became final. Therefore, his "federal petition was timely only if 'a properly filed application for State post-conviction or other collateral review was pending' for at least" 233 days of this time. *See id.* (citing 28 U.S.C. § 2244(d)(2)) (brackets omitted). Stated differently, because the federal petition was filed more than one year after Waldrip's conviction became final, it is untimely unless the limitations period is tolled for at least 233 days.

Although there are a number of different issues regarding the timeliness of Waldrip's petition potentially raised by the events here, one factor is controlling: Waldrip took too long to file his petition to the California Supreme Court.

The first state habeas petition, filed in the California Court of Appeal by Waldrip's state appellate counsel, was filed and denied before the effective date of his conviction, 40 days after the Court of Appeal affirmed the conviction on direct appeal. Although its filing would otherwise have tolled the running of the federal limitations period, since it was denied before that period had started to run, it had no effect on the timeliness of the ultimate federal filing.

---

[2]The fortieth day was in fact a Sunday, November 25, 2001, so we consider the next day, November 26, 2001, as the day Waldrip's conviction became final. *See* Fed. R. Civ. P. 6(a)(3).

The third habeas petition was filed in the California Supreme Court by Waldrip's appellate counsel on December 11, 2002. As noted above, that filing raised the same argument that was raised in the first petition filed with the state court of appeal. Waldrip filed a *pro se* supplement to that California Supreme Court petition on January 14, 2003, in which he included the argument presented in his *pro se* habeas petition filed with the superior court. Although it might be difficult to characterize the filing by Waldrip's attorney as an effort to seek review of the superior court's denial, since it did not present the same argument that was presented in the superior court petition, Waldrip's supplemental filing did, which means that the peculiar path followed by Waldrip in state court leading up to his petition to the California Supreme Court could be viewed in two different ways.

**[7]** That final state court petition could be treated as an effort to seek review by the California Supreme Court of the denial by the state court of appeal of the habeas petition filed in October 2001, in effect disregarding the petition filed by Waldrip *pro se* in superior court. The problem is that more than a year passed between the date Waldrip's conviction became final on November 16, 2001, and December 11, 2002, the date that the petition was filed with the California Supreme Court. Under *Evans,* that is too long to permit the time in between those dates to be tolled, and if the federal limitations period was running during that time, it ran out even before the California Supreme Court petition was filed.

**[8]** Alternatively, the petition to the California Supreme Court can be viewed as an attempt to obtain review by a higher court of the denial of Waldrip's petition to the superior court. Viewed this way, the period of delay prior to the California Supreme Court filing is shorter—a period of 258 days, or something over eight months, instead of a period over one year—but that is still not short enough to survive under *Evans*. Moreover, the time period leading up to the filing of the petition to the superior court would not be tolled, either.

On its face, that petition was not an effort to seek review of the court of appeal's denial, because it was filed in a *lower* state court, so the time period between the conviction effective date and this filing could not be tolled on the theory that the first petition was "pending" because Waldrip was still in the process of seeking appellate review of its denial. The superior court petition commenced a new "round" of collateral review. *See Delhomme*, 340 F.3d at 820 ("each time a petitioner files a new habeas petition at the same or lower level, . . . the subsequent petition has no effect on the already pending application, but triggers an entirely separate round of review").

Under this view of Waldrip's effort in state court, state proceedings were "pending" for 15 days in the superior court (between March 14, 2002 and March 28, 2002, inclusive) and arguably for 200 days, at most, in the state supreme court (between December 11, 2002 and June 28, 2003, inclusive).[3] That adds up to only 215 days, and as noted above, his federal filing was too late unless he can toll 233 days.

Waldrip attempts to explain or justify the delay in his state court filing by asserting that his counsel at that time was busy because he had changed employment, believed there was no specific deadline for seeking appellate review, and was waiting for the Supreme Court to decide *Lockyer v. Andrade*, 538 U.S. 63 (2003). That counsel was busy and did not know of a specific deadline does not justify the delay. Further, counsel filed the December 11 petition before the Court decided *Andrade*, so waiting until *Andrade* was decided does not explain the delay. Additionally, the December 11 petition was

---

[3]It could be argued that January 14, 2003, rather than December 11, 2002, should properly be treated as the starting date, because it was not until the *pro se* supplement was filed on the latter date that the issues raised in the superior court petition were presented to the state supreme court, but for this discussion we use the date more favorable to Waldrip as it makes no difference to the end result here.

nearly identical to the October 31, 2001 petition and counsel could easily have filed it sooner than December 2002.

Waldrip also justifies the delay by arguing that he could not use the prison library to work on his petition because a prison lockdown prohibited access to the law library. Waldrip explains that Calipatria State Prison "was on lock-down or modified lock-down status, which meant I did not have access to the law library" from December 3, 2001 to March 27, 2002. Waldrip was represented by counsel at that time, so it is not clear that Waldrip's personal access to a law library should be significant, but the excuse is unpersuasive in any event. The superior court did not rule on the *pro se* petition until March 28, 2002, and by that date Waldrip had access to the library. The prison lockdown does not explain or justify the eight month delay in filing his petition to the state supreme court.

**[9]** In sum, the one-year limitations period was tolled under the statute for at most 215 days, while petitions were pending in superior court and in the California Supreme Court. His federal petition was filed on July 18, 2003, one year and 233 days after the conviction became final. Giving him credit for 215 days of tolling still makes his federal filing too late. Because that petition was filed outside of the limitations period, the district court did not err in dismissing it as untimely.

## C.   *Evidentiary Hearing*

Waldrip contends that the district court erred in denying his request for an evidentiary hearing. Waldrip's sole contention on this point is that an evidentiary hearing "was required in this case to determine how the California courts have treated delays of similar duration alleged here." We review the district court's denial of an evidentiary hearing for abuse of discretion. *See Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005).

**[10]** *Evans* indicated that the California courts might relieve the uncertainty by clarifying what "reasonable time" means in this circumstance,[4] 546 U.S. at 199, but nothing in *Evans* suggested that this should be treated by the federal court as a factual issue, with past California decisions constituting "evidence" of what the state courts took to be a reasonable time. The district court did not abuse its discretion by denying an evidentiary hearing.[5]

## III. Conclusion

We affirm the district court's dismissal of Waldrip's habeas petition. Under *Evans v. Chavis*, the one-year federal limitations period runs—is not tolled—during an unjustified delay of more than six months between the denial of habeas relief by a California state court and the filing of a subsequent petition in a higher California court.

**AFFIRMED.**

---

[4]*Evans* also noted the possibility that our court seek guidance by certifying a question in an appropriate case to the California Supreme Court. 546 U.S. at 199. We recently did so in *Chaffer v. Prosper*, 542 F.3d 662 (9th Cir. 2008). The delay in question in that case was 115 days, between the denial of a first state habeas petition and the filing of a subsequent petition in the state court of appeal. *Id.* at 663. That time period was shorter than the six-month gap discussed in *Evans*, while Waldrip's time gap, in contrast, was longer than six months.

[5]Waldrip also contends that, in *Evans*, the Supreme Court "crossed [the] line" by "overstep[ping] federal authority to control the inner workings of state statutory and judicial procedure." We reject this argument for we are not free to overrule the Supreme Court's decision in *Evans*. *See Agostini v. Felton*, 521 U.S. 203, 207 (1997) (noting that courts of appeals shall "leav[e] to this Court the prerogative of overruling its own decisions"). We note, moreover, that *Evans* made clear that the interpretation of the federal statute of limitation, notably the word "pending" in that statute, was part of what was at issue, and that is a matter of federal law.