T.C. Memo. 2014-197

UNITED STATES TAX COURT

GREGORY S. WATKINS AND LINDA WATKINS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

DAREN J. BARONE AND COLLEEN R. BARONE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 26041-11, 26096-11.                    Filed September 25, 2014.

        R determined income tax deficiencies and accuracy-related
penalties for the 2004 and 2005 tax years under the theory that Ps had
and exercised dominion and control over assets held by S
corporations wholly owned by ESOPs.  In an amended answer R
further asserted an increased deficiency relating to an alleged taxable
distribution from a qualified retirement plan, which R contends
occurred when Ps acquired the S corporations' stock from the ESOPs.
Ps filed motions to reconsider the order granting R leave to amend his
answer on the grounds that R had knowledge of the complete
transaction giving rise to the alleged distribution.  Ps filed motions to
dismiss for lack of jurisdiction asserting that the deficiencies were
based on partnership items or affected items and that the notices of
deficiency were invalid because they were issued before the Court's
review of the partnership adjustments was complete.  Ps also filed

[*2] motions for summary judgment asserting that collateral and judicial estoppel preclude R from determining the deficiencies. Further, Ps filed motions for partial summary judgment asserting that the statute of limitations barred determination of the deficiencies for 2005.

Held: Ps' motions will be denied.

Steven R. Toscher, Lacey E. Strachan, and Richard Carpenter, for petitioners.[1]

Monica D. Polo and Mistala M. Cullen, for respondent.

MEMORANDUM OPINION

WHERRY, Judge: These cases, which we have consolidated for purposes of this opinion only, are before the Court on petitioners' motions for summary judgment, motions for partial summary judgment, motions to dismiss for lack of jurisdiction, and motions to reconsider orders granting respondent's motions for leave to amend the answers.[2]

---

[1]Mr. Carpenter entered an appearance on behalf of Linda Watkins on April 4, 2013, in docket No. 26041-11, and an appearance on behalf of Colleen R. Barone on June 17, 2013, in docket No. 26096-11, but he was not involved in the briefing or arguing of the motions.

[2]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[*3]**                                                  Background

These cases and the related litigation have a rather tortuous background.  At

the heart of these cases is the ownership structure of an asbestos removal business

set up by petitioners Gregory Watkins and Daren Barone.  Much of the factual

background underpinning that ownership structure and the reasons behind it can

be found in our prior opinion, WB Acquisition, Inc. v. Commissioner, T.C. Memo.

2011-36 (WBA Cases), and much of this background information comes from

those factual findings.

Messrs. Watkins and Barone owned an asbestos removal company called

Watkins Contracting, Inc. (WCI), which they purchased from Mr. Watkins' father

in the mid-1990s.  They sold WCI shortly thereafter to REXX Environmental

Corp. (REXX).  Messrs. Watkins and Barone stayed on with WCI as employees.

REXX began to experience financial difficulties which in turn affected

WCI's ability to bond projects.  Because the executives of REXX were unwilling

to sign personal guaranties for bonds for WCI, REXX asked Messrs. Watkins and

Barone to personally guarantee bonds in exchange for a percentage of profits from

the projects.  Eventually, REXX asked Messrs. Watkins and Barone if they wanted

---

[2](...continued)
Revenue Code in effect for the years in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

[*4] to repurchase WCI. They were reluctant to do so without a structure in place that would limit their personal exposure. Ultimately they agreed upon a structure and repurchased WCI for approximately one-third of what they sold it for.

Under the new ownership structure, WCI would be owned by a newly formed C corporation, WB Acquisition, Inc. (WB Acquisition). In turn WB Partners, which was a partnership for Federal income tax purposes, owned WB Acquisition. Two S corporations, DJB Holding Corp. (DJB Holding) and GSW Holding Corp. (GSW Holding), were 50-50 partners in WB Partners. The sole shareholder of DJB Holding was an employee stock ownership plan, DJB Holding Corp. ESOP (DJB ESOP), in which Mr. Barone was the lone participant. Similarly, Mr. Watkins was the sole participant of GSW Holding Corp. ESOP (GSW ESOP), which was the sole shareholder of GSW Holding.

Previous Tax Court Cases

Respondent issued notices of final partnership administrative adjustments (FPAAs) to WB Partners for the 2003, 2004, and 2005 tax years, notices of deficiency to WB Acquisition for the 2002, 2003, 2004, and 2005 tax years, and notices of deficiency to petitioners for their 2002 through 2005 tax years. Timely petitions to this Court followed, and these cases, seven in all, were consolidated. Ultimately, the FPAAs for WB Partners and the notices of deficiency for WB

**[\*5]** Acquisition were the subject of the opinion in the WBA Cases, in which we entered a decision on November 28, 2011.

Of importance here are respondent's concessions in the WBA Cases, which led to the severance of petitioners' individual income tax cases.[3] Respondent conceded that WB Partners, DJB Holding, GSW Holding, and the two ESOPs are not shams for Federal income tax purposes and that DJB Holding and GSW Holding were true partners of WB Partners. What necessarily follows from these concessions is that Messrs. Watkins and Barone are neither direct nor indirect partners in WB Partners.[4]

Once petitioners' cases were severed, respondent's concessions had several consequences. First, by order dated April 22, 2010, we dismissed the 2004 and

---

[3]Our opinion in the WBA Cases addressed three consolidated matters: WB Partners' challenge to the FPAAs, docket No. 29106-07; WB Acquisition's challenge to the notice of deficiency for tax year 2002, docket No. 26187-06; and WB Acquisition's challenge to the notices of deficiency for 2003 through 2005, docket No. 5039-08. We had previously severed petitioners' individual income tax cases pertaining to alleged deficiencies for tax year 2002, docket Nos. 25508-06 and 26156-06; and for tax years 2003 through 2005, docket Nos. 5038-08 and 5954-08. Petitioners' individual income tax cases for 2002 remain pending.

[4]This conclusion follows because while the holding corporations are pass-through partners, the ESOP is not, and therefore Messrs. Watkins and Barone cannot be indirect partners. Sec. 6231(a)(9) and (10); see also Weekend Warrior Trailers, Inc. v. Commissioner, T.C. Memo. 2011-105 (discussing the history and consequences of an ESOP's holding the stock of an S corporation).

[*6] 2005 tax years for lack of jurisdiction. We found the proposed adjustments stemmed from partnership items, which were properly the subject of the partnership proceeding and that the notices of deficiency as to the 2004 and 2005 tax years were invalid. With respect to the 2003 tax years, however, we found that petitioners made a valid section 6223(e)(3)(B) election, which allowed us to treat partnership items as nonpartnership items for that year. Respondent conceded that Messrs. Watkins and Barone were not direct partners of WB Partners during 2003. Because they held their interests in WB Partners through ESOPs, which are not "pass-thru partners" within the meaning of section 6231(a)(9), we found that they were not indirect partners during 2003 either. Accordingly, because Messrs. Watkins and Barone were neither direct nor indirect partners of WB Partners, the section 6223(e)(3)(B) election became meaningless. On March 6, 2012, we granted summary judgment in favor of petitioners and decided that there were no deficiencies or underpayments of income tax for petitioners' 2003 tax year.

Respondent moved to vacate those decisions on the grounds that petitioners realized an accession to wealth through their dominion and control over the funds in the holding corporations. We denied these motions, but we noted that respondent's motion to vacate "sets forth an argument and related facts that likely would meet the standard required to overcome a motion for summary judgment.

[*7] Unfortunately, respondent failed to make such an argument when [he] * * * had the chance." Respondent did not appeal our decisions as to the 2003 tax year, and they became final.

Current Tax Court Cases

In the current cases, respondent seeks to assert the dominion and control theory that he advanced too late for petitioners' 2003 tax years. In notices of deficiency dated August 11, 2011, respondent determined deficiencies and penalties as follows:

| Couple | Year | Deficiency | Sec. 6662(a) Penalty |
|--------|------|------------|----------------------|
| The Barones | 2004 | $1,388,735 | $277,746.60 |
|  | 2005 | 693,202 | 138,189.00 |
| The Watkinses | 2004 | 1,395,722 | 279,143.00 |
|  | 2005 | 684,950 | 136,134.00 |

The deficiencies stem from other income of $3,946,342 and $1,952,026 that respondent alleges both couples received for the 2004 and 2005 tax years, respectively. These items of other income, as petitioners emphasize, bear a remarkable similarity to distributions made by WB Partners to DJB Holding and GSW Holding in those tax years, $3,946,342 to each partner for 2004 and

[*8] $1,952,026 to each partner for 2005. By way of explanation, the notices of deficiency include the following cursory statements:

> It has been determined that you failed to report gross income of $3,946,342.00 and $1,952,026.00 for the tax years ending December 31, 2004, and December 31, 2005, respectively. Gross income includes all accessions to wealth from actual receipt and/or constructive receipt of income. Income is constructively received when it is credited to your account, unconditionally set apart for you, or otherwise made available so that you could draw upon it at any time.

Petitioners timely petitioned this Court for redetermination on November 14, 2011. Both couples lived in San Diego County, California, at that time. After petitioners filed their motions for summary judgment, motions for partial summary judgment, and motions to dismiss for lack of jurisdiction, respondent filed his responses objecting to the motions, and both parties filed memoranda of law in support of their positions. While these motions were pending we granted respondent's motions, on December 3, 2012, for leave to amend the answers.

Unwinding the ESOP

In 2005 petitioners decided to unwind the ESOP ownership structure. On November 30, 2005, the ESOPs entered into agreements with the respective S corporations in which each of the S corporations agreed to purchase and redeem its 990 shares of stock held by the respective ESOP for roughly $500,000. The

[*9] parties executed these agreements on the same day. Also on the same day, Messrs. Watkins and Barone were granted and immediately exercised their rights, under stock option agreements, to purchase 100 shares of stock from their respective S corporations for $1 per share. In his amended answers, respondent seeks to recharacterize these transactions as taxable distributions from a qualified retirement plan, resulting in taxable income equal to the amount of retained earnings of GSW Holding and DJB Holding.[5]

A hearing was held in San Diego, California, on December 10, 2012.

Discussion

I. Motion To Reconsider

On December 3, 2012, we granted respondent's motions for leave to amend the answers over petitioners' objections. Respondent's amended answers alleged that petitioners failed to report income from the transaction unwinding the ESOP structure, which respondent alleges "should be recast under the step transaction doctrine" as a taxable early distribution from a qualified retirement plan.

---

[5]Evidently respondent contends in the alternative that the redemption and option exercise was a prohibited transaction and issued notices of deficiency predicated on that contention to Messrs. Watkins and Barone for tax years 2005 through 2011. This argument is now the subject of a different set of cases, docket Nos. 30244-12 and 30529-12.

[*10] We granted these motions in part on the basis of respondent's representation that, while he was aware of the redemption of the shares from the ESOPs, he was not aware of the granting and exercising of the stock options by Messrs. Watkins and Barone.[6] Petitioners now cry foul and allege that respondent's representation was inaccurate because respondent was aware of both the redemption transaction and the granting and exercising of the stock options. Petitioners base their motions for reconsideration on that alleged misrepresentation.

In his memorandum of authorities in the Watkinses' case, filed in support of his motion for leave to amend, respondent stated:

> The redemption of stock by GSW Holding Corporation from GSW Holding Corporation, ESOP is just one step of the transaction at issue. As stated above, the Amendment alleges a complex abusive transaction petitioners engaged in and failed to disclose. The fact that respondent was aware of the redemption is different than respondent being aware of the entire transaction. Without knowledge of the entire transaction, respondent was not aware of the subsequent tax consequences.

Substantially identical language appears in the memorandum filed in the Barones' case. At the time and in the context in which the statement was made, we read this

---

[6]This representation, among others, led us to conclude that respondent had not unduly delayed asserting the legal theory added in his amended answers. We also found that petitioners would suffer no surprise, unfair disadvantage, or material prejudice from the amendment because the relevant information had been in petitioners' hands all along, and ample time remained before trial.

**[*11]** language to mean that respondent, while aware of the redemption, was not aware of the granting and exercising of the stock options. Petitioners attached to their motions to reconsider documents that show respondent was aware of at least some of the facts surrounding the stock options. Respondent admits as much but states that what he meant by those statements was that he was not aware of the whole transaction and without such knowledge was not aware of the subsequent tax consequences.

Generally, leave to amend a pleading shall be freely given when justice requires. Rule 41(a); Waldrip v. Hall, 548 F.3d 729, 732 (9th Cir. 2008) ("[P]ublic policy strongly encourages courts to permit amendments."); Donnora v. Commissioner, T.C. Memo. 1998-187. The Court looks to the facts and circumstances surrounding the request to determine whether justice requires such an amendment. Law v. Commissioner, 84 T.C. 985, 990 (1985). A number of factors come into play, inter alia (1) the timeliness of the motion for leave to amend, (2) the reasons for the delay, including the possibility of bad faith, (3) whether the moving party had sufficient prior opportunity to allege the matter contained in the requested amendment, and (4) undue prejudice to the opposing party. See Foman v. Davis, 371 U.S. 178, 182 (1962); Derksen v. Commissioner, 84 T.C. 355, 358 n.7 (1985). When deciding whether to permit an amendment to a

**[\*12]** pleading, the court asks whether an excuse for delay exists and whether the opposing party would suffer unfair surprise, disadvantage, or prejudice. Waterman v. Commissioner, 91 T.C. 344, 349-351 (1988).

But motions to reconsider are not the appropriate vehicle "for rehashing previously rejected legal arguments or tendering new legal theories to reach the end result desired by the moving party." Estate of Quick v. Commissioner, 110 T.C. 440, 441-442 (1998). Our reasoning set forth in the order granting respondent's motion for leave to amend the answers was sound. Petitioners' principal basis for reconsideration is that respondent misrepresented that he was not aware of the transaction. Respondent's counsel, as an officer of the Court, maintains that respondent was not aware of the full transaction and could not have been aware of the full transaction and its impact on petitioners' Federal income tax liability when the notices of deficiency were issued or the original answer was filed. Thus, petitioners' motions for reconsideration will be denied.

II. Motion To Dismiss for Lack of Jurisdiction

We turn next to petitioners' motions to dismiss for lack of jurisdiction because if we lack jurisdiction, we need not decide the motions for summary judgment and partial summary judgment.

[*13] Petitioners' motions to dismiss for lack of jurisdiction state that the Court lacks jurisdiction because the adjustments in the notices of deficiency giving rise to this litigation are attributable to partnership items of WB Partners. Petitioners allege that respondent is attempting to reallocate partnership income from the S corporations to petitioners or asserting that WB Partners is a sham, which should have been done in the partnership proceeding. Consequently, according to petitioners, the notices of deficiency are invalid. Respondent counters that what he seeks to assert are not partnership items but rather independent sources of income.

The unified audit and litigation provisions of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648, currently codified at sections 6221 through 6234, provide that "the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level." Sec. 6221. If the partnership seeks readjustment of the Commissioner's adjustments, any notice of deficiency to the individual partners that purports to determine deficiencies based on partnership adjustments or affected items is invalid if sent before the readjustment of the partnership adjustments is final. GAF Corp. v. Commissioner, 114 T.C. 519, 528

**[*14]** (2000). In this case, respondent issued the notices of deficiency before the partnership items of WB Partners had been readjusted because the Court had yet to issue a final decision in the partnership action.

Petitioners allege that respondent's theory--that petitioners exercised dominion and control over the funds of the S corporations--is merely a restatement of a previously litigated issue--that WB Partners was a sham partnership or, alternatively, that Messrs. Watkins and Barone are partners of WB Partners. Whether a partnership is a sham is a partnership item. Napoliello v. Commissioner, 655 F.3d 1060, 1065 (9th Cir. 2011), aff'g T.C. Memo. 2009-104. As to their alternative proposition, petitioners contend that respondent's theory necessarily requires a finding that Messrs. Watkins and Barone received the distributions. Sec. 301.6231(a)(3)-1(a)(1)(i), (4), Proced. & Admin. Regs.

Respondent counters that the adjustments in the notices of deficiency are not partnership items. In fact, respondent conceded in the prior litigation and concedes in this litigation that WB Partners, the S corporations, and the ESOPs are not shams. According to respondent, the adjustments simply reflect the fact that petitioners had dominion and control over the S corporations' funds and therefore had an accession to wealth. Respondent is not arguing that there is a constructive dividend or a distribution from the S corporations or WB Partners.

[*15] We agree that partnership items are not involved here. The fact that the funds may have at some point come from a distribution from WB Partners to GSW Holding and DJB Holding does not make petitioners' alleged use of the funds for personal gain necessarily a partnership item. Respondent is not saying that Messrs. Watkins and Barone had dominion and control over the funds of WB Partners. Rather, respondent alleges Messrs. Watkins and Barone had dominion and control over the funds of the S corporations. Thus, the alleged item of income adjusted in the notice of deficiency is not a partnership item, and we have jurisdiction.

Petitioners, however, also seem to argue that if respondent's determinations are not determinations based on partnership items, then those determinations are so vague as to render the notice of deficiency invalid. For the Court to have jurisdiction, a petition must be filed in response to a valid notice of deficiency. Scar v. Commissioner, 814 F.2d 1363, 1366 (9th Cir. 1987), rev'g 81 T.C. 855 (1983); Stamm Int'l Corp. v. Commissioner, 84 T.C. 248, 252 (1985). For a notice of determination to be valid, "the Commissioner must consider information that relates to a particular taxpayer before it can be said that the Commissioner has 'determined' a 'deficiency' in respect to that taxpayer." Scar v. Commissioner, 814 F.2d at 1368. In support of the proposition that these notices of deficiency are

**[\*16]** invalid, petitioners cited, at the hearing, a District Court case that they argue stands for the proposition that an estimate in a notice of deficiency is not a valid determination. See Estate of Weller v. United States, 58 F. Supp. 2d 734, 741 (S.D. Tex. 1998).

In Estate of Weller, the Internal Revenue Service (IRS) issued an FPAA to a partnership disallowing losses. Id. at 736. The adjustment became final, and the IRS issued a notice of deficiency to a taxpayer-partner determining penalties on the taxpayer's share of the disallowed losses. Id. at 736-737. The notice of deficiency based the penalty on the entirety of the partner's share of the disallowed losses rather than the amount of losses actually claimed by the partner on his tax returns, on which the taxpayer claimed only half of the losses. Id. The District Court found that the IRS failed to examine the taxpayer's returns and made an estimate based on the partnership's return rather than a determination based on the information within the IRS' possession. Id. at 741.

Petitioners point out that the amounts taxed to them are exactly the amounts of the distributions from WB Partners to the S corporations. Thus, their argument goes, respondent is merely asserting a deficiency based solely on the returns of another taxpayer without actually examining petitioners' returns. But respondent's notice of deficiency is not based solely on the partnership returns;

**[\*17]** rather, respondent argues that he based the notice on the facts within his possession as to petitioners' control and use of funds.

Accordingly, we will deny petitioners' motion to dismiss for lack of jurisdiction.[7]

III.    Motion for Summary Judgment

"Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials." Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  A party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  Facts are viewed in the light most favorable to the nonmoving party.  Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985).  Where a motion for summary judgment has been properly made and supported by the moving party, the nonmoving party "may not rest upon the mere allegations or denials" contained in that party's pleadings but must by

---

[7]We note, as the Supreme Court has recently affirmed, that the Court has an independent obligation to determine its jurisdiction over a case, and that questions about jurisdiction can be raised at any time.  Henderson ex rel. Henderson v. Shinseki, 562 U.S. ___, ___, 131 S. Ct. 1197, 1202 (2011).  We exercise jurisdiction here not merely because the grounds stated in petitioners' motion do not persuade us that we lack jurisdiction, but also because we have independently determined that we have jurisdiction.

**[*18]** affidavits or otherwise "set forth specific facts showing that there is a genuine dispute for trial." Rule 121(d). Summary judgment may be appropriate where evidence submitted by the nonmoving party is merely colorable or not significantly probative. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986).

Petitioners move for summary judgment on the grounds that respondent is estopped from asserting the alleged deficiencies because of orders issued in Barone v. Commissioner, T.C. Dkt. 5038-08 (Mar. 6, 2012), and Watkins v. Commissioner, T.C. Dkt. 5954-08 (Mar. 6, 2012), and the opinion issued in the WBA Cases. Petitioners assert that both the collateral estoppel and judicial estoppel doctrines apply in this case. According to petitioners, because respondent is estopped from asserting that Messrs. Watkins and Barone were partners and that the distributions from WB Partners to the S corporations were actually distributions to them, then respondent's determination cannot stand, especially where respondent provided no proof of an alternative theory.

Under the doctrine of collateral estoppel, "once an issue of fact or law is 'actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" Bussell v. Commissioner, 130

**[\*19]** T.C. 222, 239 (2008) (quoting <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979)).  Collateral estoppel "is a judicially created equitable doctrine whose purposes are to protect parties from unnecessary and redundant litigation, to conserve judicial resources, and to foster certainty in and reliance on judicial action."  <u>Monahan v. Commissioner</u>, 109 T.C. 235, 240 (1997) (citing <u>Montana</u>, 440 U.S. at 153-154, and <u>United States v. ITT Rayonier, Inc.</u>, 627 F.2d 996, 1000 (9th Cir. 1980)).  "Collateral estoppel may be utilized in connection with matters of law, matters of fact, and mixed matters of law and fact."  <u>Meier v. Commissioner</u>, 91 T.C. 273, 283 (1988).

For the Court to apply collateral estoppel, the following five conditions must exist:

> (1) The issue in the second suit must be identical in all respects with the issue decided in the first suit, (2) the issue in the first suit must have been the subject of a final judgment entered by a court of competent jurisdiction, (3) the person against whom collateral estoppel is asserted must have been a party or in privity with a party in the first suit, (4) the parties must actually have litigated the issue in the first suit and resolution of the issue must have been essential to the prior decision, and (5) the controlling facts and applicable legal principles must remain unchanged from those in the first suit. * * *

<u>Bussell v. Commissioner</u>, 130 T.C. at 239-240; <u>see also</u> <u>Peck v. Commissioner</u>, 90 T.C. 162, 166-167 (1988), <u>aff'd</u>, 904 F.2d 525 (9th Cir. 1990).

**[\*20]** Judicial estoppel is also available to this Court and should be used in appropriate circumstances. Huddleston v. Commissioner, 100 T.C. 17, 28-29 (1993). Judicial estoppel differs from collateral estoppel in that there is no need for privity of parties or detrimental reliance. Id. at 26. The purpose of judicial estoppel is to "prevent[] parties in subsequent judicial proceedings from asserting positions contradictory to those they previously have affirmatively persuaded a court to accept." Id. In determining whether to invoke the doctrine of judicial estoppel, courts look to several factors such as whether a party's later position is "'clearly inconsistent' with its earlier position", "whether the party has succeeded in persuading a court to accept that party's earlier position", and whether the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. 742, 750-751 (2001).

Petitioners assert that (1) respondent is judicially and collaterally estopped from relitigating whether Messrs. Watkins and Barone were direct or indirect partners of WB Partners and (2) respondent is judicially estopped from relitigating whether WB Partners, the holding corporations, and the ESOPs should be respected for Federal income tax purposes. In support of their motion, petitioners attach the Court's decision in docket No. 29106-07 with respect to WB Partners' tax years 2003 through 2005, which decided that WB Partners made monetary

[*21] distributions to its two partners totaling $7,892,683 in 2004 and $3,904,052 in 2005, and petitioners' notices of deficiency in which respondent determined increases to income of $3,946,342 and $1,952,026 for both couples.

These increases to income are equal to the amounts of the distributions WB Partners made to the S corporations. According to petitioners, respondent's notices of deficiency take the distributions from WB Partners to the S corporations and reallocate it to petitioners, which, in their view, necessitates a finding that the S corporations were shams or that petitioners were partners in WB Partners. Petitioners insist that, unless respondent is arguing for one or both of these findings--arguments that he is estopped from making--he has not shown where the alleged income came from.

Respondent contends the determinations are not based on shamming WB Partners or on a determination that Messrs. Watkins and Barone were partners of WB Partners. Respondent therefore argues that it is unnecessary for us to address the judicial and collateral estoppel arguments, because he is not making the arguments that petitioners claim he is estopped from making. Simply put, respondent argues that Messrs. Watkins and Barone had control of the funds in their S corporations and exercised complete control and dominion over and made

[*22] personal use of those funds such that petitioners had an accession to wealth. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).

Respondent lists a series of facts, in his opposition to petitioners' motions, that allege the extent of Messrs. Watkins' and Barone's control and use of the S corporations' funds. Specifically, respondent asserts that Messrs. Watkins and Barone used the funds and assets of GSW Holding and DJB Holding to pursue personal investment decisions, to support their lifestyle, and to pay for personal expenses as well as keeping the funds available to cover personal financial obligations.

With respect to Mr. Barone, respondent references the record in the WBA Cases where Mr. Barone testified about a Rolls Royce and real property. DJB Holding purchased the Rolls Royce, and Mr. Barone drove it.[8] DJB Holding paid some expenses associated with what Mr. Barone testified was an investment referred to as the "Herschel property", though he did say he "stayed there" for an amount of time not revealed by the record. Finally, respondent states that Mr. Barone testified that he planned to use DJB Holding assets to cover personal

---

[8]Of course, the Court realizes it is not unheard of for a corporation to provide its executives premier company cars. See, e.g., Brallier v. Commissioner, T.C. Memo. 1986-42 (Rolls-Royce and race cars); Miller v. Commissioner, T.C. Memo. 1982-491 (Mercedes); Perrotto v. Commissioner, T.C. Memo. 1977-99 (Cadillac).

[*23] obligations under bonds issued with respect to the contracting business.  Mr. Barone's testimony, however, reveals not that he intended to use the assets to cover personal obligations, but rather that he was attempting to protect some of his cashflow and his business assets from prospective personal creditors.  Respondent has set forth specific facts to raise a genuine dispute of material fact as to whether the funds of the S corporations were used to pursue personal investment opportunities and to pay personal expenses.  Furthermore, we do not believe that respondent is making an argument here that contradicts his concessions in the WBA Cases.

IV.    Motion for Partial Summary Judgment

Petitioners' motion for partial summary judgment alleges that as to the 2005 tax year, respondent issued the notice of deficiency after the period of limitations expired.  Respondent asserts that the six-year statute of limitations applies because petitioners' returns omitted from gross income amounts in excess of 25% of the amounts reported.  Sec. 6501(e).  For individual taxpayers, gross income includes the taxpayer's share of gross income from partnerships or S corporations. Hoffman v. Commissioner, 119 T.C. 140, 148 (2002); Benson v. Commissioner, T.C. Memo. 2006-55, slip op. at 7, aff'd, 560 F.3d 1133 (9th Cir. 2009). Petitioners do not dispute that the amounts allegedly omitted exceed 25% of the

**[*24]** gross income shown on their returns.  Rather, they contend they adequately disclosed the items of income.

For the purposes of section 6501(e), an item of income is not omitted from gross income if the taxpayer discloses the income "in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item."  Sec. 6501(e)(1)(A)(ii).  The disclosure does not need to be "a detailed revelation of every fact underlying the transaction."  Estate of Frane v. Commissioner, 98 T.C. 341, 355 (1992), aff'd in part, rev'd in part on other grounds, 998 F.2d 567 (8th Cir. 1993); accord Quick Trust v. Commissioner, 54 T.C. 1336, 1347 (1970), aff'd, 444 F.2d 90 (8th Cir. 1971).  But the disclosure does need to "be sufficiently detailed to apprise respondent and her agents as to the nature and amount of the transaction so that a decision as to whether to select the return for audit may be a reasonably informed one."  Estate of Frane v. Commissioner, 98 T.C. at 355.  Whether disclosure has sufficiently alerted the Commissioner is a question of fact.  Whitesell v. Commissioner, 90 T.C. 702, 707-708 (1988).

In 2005 petitioners unwound the ESOP ownership structure.  By the end of the tax year, they owned the S corporations; thus, they attached to their returns information statements reflecting items of income and loss from the holding

[*25] corporations.  The holding corporations in turn attached to their returns information statements reflecting items of income and loss from the partnership. Petitioners contend that, when we look at all these returns, the items of income alleged by respondent to have been omitted are clearly disclosed.  For his part, respondent believes these returns do not adequately disclose petitioners' dominion and control over the S corporations' assets and their personal use of those assets. The parties' dispute raises genuine issues of fact, and summary judgment is, therefore, inappropriate.

The Court has considered all of petitioners' and respondent's contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are moot, irrelevant, or without merit.  To reflect the foregoing and concessions by the parties,

<u>Appropriate orders will</u>

<u>be issued</u>.