T.C. Summary Opinion 2017-85

UNITED STATES TAX COURT

MATTHEW ERIC BAHAM AND JENNIFER MICHELLE BAHAM, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25666-14S.                        Filed November 29, 2017.

Matthew Eric Baham and Jennifer Michelle Baham, pro sese.

<u>Michael K. Park</u> and <u>Mark A. Nelson</u>, for respondent.

SUMMARY OPINION

WHERRY, <u>Judge</u>:  This case was heard pursuant to section 7463 of the

Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (Code), as amended and in effect for the tax year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $12,213 deficiency in petitioners' 2012 Federal income tax and a $2,442.60 section 6662(a) accuracy-related penalty. We decide the following issues:

(1) whether petitioners timely filed their petition, affording this Court jurisdiction to hear the case. We hold that they did and that this Court has jurisdiction to hear their case;

(2) whether petitioners are entitled to deductions for other expenses of $5,000 and for supplies of $16,536 on their Schedule C, Profit or Loss From Business, for tax year 2012. After the parties' concessions, we hold that petitioners are entitled to deduct an additional $2,800 for 2012 (over the $2,200 respondent allowed during audit) and to amortize $362.93 over 180 months beginning with December 2012;

(3) whether petitioners are entitled to itemized deductions claimed on Schedule A, Itemized Deductions, for unreimbursed employee business expenses of $29,790 (before applying the 2% AGI floor; after the floor, $27,326) for tax year 2012. We hold that petitioners are not entitled to any such deductions; and

(4)     whether petitioners are liable for the section 6662(a) accuracy-related penalty.  We hold that they are so liable, albeit for a penalty reduced by virtue of their deductions as allowed in this opinion.

## Background

Petitioners Matthew and Jennifer Baham lived in California when they filed their petition.  They were at that time both school teachers, and they filed a joint Federal income tax return for 2012.  But for section 7463(b), this case would be appealable to the Court of Appeals for the Ninth Circuit.

## I.     Petitioners' Background

Petitioners resided in Monrovia, California, at the time their petition was filed.  During the year at issue Mr. Baham was an employee of Loyola High School and of Educational Testing Service (ETS), performing personal services as a teacher.  Mrs. Baham worked as a full-time teacher with the Monrovia Unified School District, teaching 9th through 12th grades.  Mrs. Baham was also an employee of University of Phoenix, Inc., and ETS.

## II.    Petitioners' Tax Returns

Petitioners filed their 2012 income tax return on April 15, 2013.  On line 21 of their Schedule A they reported $29,790 as unreimbursed employee expenses.  On Mr. Baham's Form 2106-EZ, Unreimbursed Employee Business Expenses,

petitioners reported expenses of $5,205. And on Mrs. Baham's Form 2106-EZ, petitioners reported expenses of $14,085.[2]

On their 2012 Schedule C petitioners reported Mrs. Baham to be the proprietor of a photography business called Captured by Jemi Photography. On that Schedule C petitioners reported gross receipts of $1,050 and claimed the following expense deductions: $650 for advertising; $120 for car and truck expenses; $830 for office expenses; $16,536 for supplies; $600 for utilities; and $5,000 for other expenses, which were described as "Startup Costs". On their 2012 Form 8829, Expenses for Business Use of Your Home, petitioners reported direct expenses of $950 and indirect expenses of $2,500 for repairs and maintenance, among other expenses.

III.  Mrs. Baham's Photography Activities

Mrs. Baham first became interested in photography while in college, where she undertook coursework in the subject. At the time, she used an old camera and black-and-white film. After she graduated from college in 1999, she began teaching out of necessity. She married Mr. Baham and continued to teach. While she never lost interest in photography, she lacked the financial means to pursue it

---

[2]The amounts from the Forms 2106-EZ add up to $19,290, which is substantially less than the $29,790 petitioners reported on their Schedule A as unreimbursed employee expenses. This discrepancy remains unexplained.

although she would from time to time take portraits of friends and family. Over the years, Mr. Baham would purchase lenses for her, making sure to buy those at the top of the line to ensure that, even as camera technology advanced, the lenses could still be used.[3]

Mrs. Baham first decided to attempt to pursue photography professionally in 2010 or 2011, when the school where she worked took a turn for the worse. Thus, in 2012, Mrs. Baham, in addition to working full time as a teacher, began to engage in photography-related activities during evenings and weekends. Her goal was to transition eventually out of teaching and into photography as a full-time business. Before 2012 she did not engage in professional business activities relating to photography although as noted she did take portraits for friends and family. When Mrs. Baham decided to pursue photography professionally in 2012, she began charging for her services but continued taking pictures without charge for friends and family. She found herself balancing her teaching career with her photography, figuring out the business side as she went. Mrs. Baham had only three asserted business photo shoots in 2012: a maternity shoot, an infant shoot,

---

[3]For example, sometime in 2002 or 2003 Mr. Baham bought two EF EOS lenses as gifts for Mrs. Baham. Mr. Baham purchased the lenses with an eye toward potential future use in a business although any actual steps toward establishing the business were undertaken some years later.

and an engagement shoot. Her first client effort was the maternity shoot in March or April 2012. The maternity and the infant shoots were for the same person, the instructor of Mrs. Baham's martial arts class. The engagement shoot was for Mr. Baham's younger sister. While Mrs. Baham did not charge her sister-in-law, nor was the latter under any obligation to pay, she did pay Mrs. Baham for the engagement photographs.

The record does not establish definitively when Mrs. Baham performed photography services for her first paying client, nor what she charged for such services during 2012. At the time of trial Mrs. Baham charged $350 for a sitting, which includes an 8 x 10 photograph and a digital copy thereof, with additional charges for add-ons. Mrs. Baham used an Apple laptop she purchased around 2009 or 2010 to hold her digital photographs.

Petitioners purchased a high-end Canon camera on June 24, 2012, believing it necessary for Mrs. Baham's success in her photography business. The high-end camera was intended to replace a less-advanced camera body Mrs. Baham already owned. Also in 2012 petitioners began converting an approximately 350-square-foot room in their home into a photography office and continued to make such renovations throughout 2012. Mr. Baham purchased the supplies for the renovation and performed the work himself. One of the projects involved creating

more natural light through the addition of a window. Further work involved closing off the entryway to the room and making it into a doorway, as well as recarpeting the room and running electrical wires for charging stations and a computer. Petitioners believed that these renovations were necessary to create a private office and studio for Mrs. Baham although the room, which was a family room before the conversion, was used as a photography den before the renovations, as early as January or February 2012.

Beyond the expenses Mrs. Baham incurred for the purchase of the camera, a book on photography purchased earlier in the year, and the home renovations, petitioners reported further expenses for three photography-based web pages (Snapfish, Life Touch, and Zen Folio), frames and other photography products (Aaron Brothers), publishing (My Publisher), additional photography equipment (Samy's Camera), photograph production (Miller's M-Pics), a conference on portraiture (Beginning Portraiture, through Eventbrite), various products, props, and accessories (Wal-Mart, Cost Plus, and World Market), and UPS shipping costs for the receipt of pictures and/or frames.[4] Mrs. Baham also reported $450, which was one-third of her estimated annual cellular phone bill, as a business expense.

[4]At trial, Mr. Baham explained that the web page expenses may have been classified as advertising expenses on petitioners' tax return but was not certain.

The total cellular phone bill was split into equal thirds: one-third for the photography business, one-third for teaching activities, and one-third for personal use.

To substantiate the above expenses, petitioners presented the following documentation:

(1)  a printout from Amazon evidencing the purchase for $3,071.95 and shipment on June 25, 2012, of a Canon EOS-1Ds Mark III 21.1MP Digital SLR Camera body;

(2)  a printout from Amazon evidencing the purchase for $15.98 and shipment on February 25, 2012, of a book titled Understanding Exposure, 3rd Edition: How to Shoot Great Photographs with Any Camera, by Bryan Peterson;

(3)  bank statements with the following purchases marked with the letter "P" for "Photography", totaling $3,773.50:

| Merchant | Location | Total expenditure |
|---|---|---|
| The Home Depot | Monrovia, Cal. | $2,094.37 |
| Verizon Wireless | Unspecified | [1]172.14 |
| Sears Roebuck | Pasadena, Cal. | 82.62 |
| S G Nursery | San Gabriel, Cal. | 69.03 |
| Kmart | Temple City, Cal. | 225.62 |
| Snapfish | Unspecified | 13.61 |
| Michaels | Monrovia, Cal. | 72.41 |
| Costplus | Pasadena, Cal. | 54.26 |
| Bear Essentials Shoppe | Arcadia, Cal. | 19.49 |
| World Market | Pasadena, Cal. | 39.11 |
| The UPS Store | Monrovia, Cal. | 44.62 |
| Beginning Portraiture | Eventbrite/unspecified | 75.00 |
| The Dog Zone | Monrovia, Cal. | 70.00 |
| Mpix/Miller's | Unspecified | 44.52 |
| Zenfolio.com | Unspecified | 25.00 |
| Wal-Mart | Duarte, Cal.7 | 77.73 |
| Dunn and Olsen Carpet | Temple City, Cal. | 120.00 |
| My Publisher, Inc. | Unspecified | 221.84 |
| Aaron Brothers | Pasadena, Cal. | 78.30 |
| Dollar Tree | Arcadia, Cal. | 18.49 |
| Joann Fabric | Arcadia, Cal. | 34.80 |
| Lifetouch Online | Unspecified | 27.00 |
| Samy's Camera, Inc. | Pasadena, Cal. | 34.27 |
| Stats Floral Supply | Pasadena, Cal. | 59.27 |

[1]At trial, Mr. Baham noted that, since this charge for cellular service was recurring monthly, he estimated the total annual charge using this number, arriving at $1,350 for the year. One-third of that number is $450, which is the amount claimed for each of the Schedule C expenses and unreimbursed employee expenses.

Mrs. Baham continued her photography business after 2012, taking a hiatus in 2014 for the birth of a child but returning to it in 2015. Those subsequent years presented an improvement over 2012, with more frequent photo shoots.

IV.     Petitioners' Teaching Activities

Mr. Baham was a teacher during 2012. In addition to his primary occupation, he ran the SAT program at his school through ETS, an offsite service that administers the SAT. He was engaged as a contractor and was compensated by ETS. Mrs. Baham was also involved with ETS.

Mrs. Baham became a teacher after graduating from college in 1999. She worked as a full-time high school teacher during the tax year at issue.

Seeking to engage her students' attention, Mrs. Baham used live animals in her classroom as an aspect of her biology and zoology course instruction. This method, while effective, was not endorsed by the school district. Mrs. Baham nonetheless viewed it as necessary to engage her students, who otherwise were prone to apathy. The school district employing Mrs. Baham confronted multiple disciplinary problems within the student body, and her use of animals helped to alleviate some of the tardiness and truancy that might have resulted otherwise.

During 2012, Mrs. Baham was a member of the Monrovia Teachers Association, CTA/NEA, a union, and her employment was subject to a contract

- 11 -

between it and her employer. Under that agreement, which was in effect from July 1, 2012, to June 30, 2015, there was no reimbursement policy for teachers when they incurred classroom expenses on their own account.

As noted above, Mrs. Baham claimed a $450 deduction for cellular phone expenses, which was one-third of petitioners' total estimated cellular phone bill for the year. Mrs. Baham used her personal cellular phone, because she did not have a telephone for her use at work and there was an unwritten expectation by her employer that she would be available to be reached by phone call and text message. Petitioners maintained a separate home telephone line during 2012.

Furthermore, Mrs. Baham claimed deductions for research and literature expenses incurred at the Discovery Science Center and the Los Angeles Zoo and through the purchase of movie tickets. While petitioners had a pass allowing them free admittance to the Los Angeles Zoo, on one day in 2012 Mrs. Baham made a payment for an activity there involving animal biology, that petitioners seek to deduct. Mr. Baham accompanied his wife to the movie theater.

Mrs. Baham claimed expense deductions for fish tank supplies and animal feed and care that she undertook with respect to her zoology instruction. Mrs. Baham kept the animals--two bearded dragons, two African gray parrots, several red-eared sliders, two rabbits, a tortoise, koi, and a rainbow boa--at the school

where she worked during the school year but brought them home over the summer months. The animals could be left alone for up to a week, provided they were supplied with adequate food, so Mrs. Baham would leave them at the school for the weeklong spring break and would come in once to feed them over the fortnight-long winter break.

Petitioners did not name the animals. Petitioners' children did not like having the animals at home because they were required to clean up after them. The animals were easily transported to petitioners' home for the summer: the reptiles were placed in cloth sacks or shoeboxes; the parrots were transported in a pet carrier with a built-in perch and kept in a cage in petitioners' backyard; the rabbits were moved in a pet carrier; and the fish were transported in a bucket and kept in an aquarium at petitioners' house. Petitioners had had to make modifications to their house to accommodate the animals.

Petitioners had a miniature collie at home, though they admitted that, relying on the bank statements they sought to use to corroborate their expenses, they could not differentiate between the expenses associated with the dog and the expenses associated with the classroom animals. The bank statements petitioners presented, with the following purchases marked with the letter "T" for "Teaching", total $2,209.08:

| Merchant | Location | Total expenditure |
|---|---|---|
| Community Companion | Temple City, Cal. | $194.12 |
| Discovery Science Center | Santa Ana, Cal. | 105.00 |
| Petsmart Inc. | Pasadena/Monrovia, Cal. | 839.69 |
| Whittier Narrows Feed | Whittier, Cal. | 71.36 |
| Verizon Wireless | Unspecified | [1]172.14 |
| Greater LA Zoo Assoc. | Los Angeles, Cal. | 89.00 |
| Ipic Theaters Pasadena | Pasadena, Cal. | 180.09 |
| AMC Santa Anita | Arcadia, Cal. | 18.00 |
| The Feather Farms | Napa, Cal. | 42.02 |
| Bird Hill Products | Unspecified | 154.44 |
| The Dog Zone | Monrovia, Cal. | 85.00 |
| Petco | San Gabriel, Cal. | 126.66 |
| Lakeshore Learning | Pasadena, Cal. | 76.77 |
| Highlander Pet Center | Monrovia, Cal. | 23.79 |
| Animal Hospital | Duarte, Cal. | 31.00 |

[1]See supra p. 9, table note 1.

At the time of trial, Mrs. Baham was still working as a teacher.

V.    Notice of Deficiency and the Parties' Concessions

For the 2012 tax year petitioners timely filed their income tax return on April 15, 2013, and respondent mailed a notice of deficiency on July 24, 2014.

In the notice respondent disallowed Schedule C/other expense deductions of $5,000 and Schedule C/supplies expense deductions of $16,536. At trial petitioners restricted their claims to only seven categories of expenses totaling $7,586.64 relating to Mrs. Baham's photography business: $3,071.95 for a Canon EOS-1Ds Mark III body; $2,187.53 for home renovations; $44.62 for shipping;

$655.17 for products; $1,000.12 for props and accessories; $177.25 for literature, conference, and web costs; and $450 for one-third of the costs of a cell phone. Petitioners conceded respondent's remaining adjustments to their Schedule C expenses. Respondent, in turn, has conceded that the Canon camera petitioners purchased on June 25, 2012, for $3,071.95, and the book titled Understanding Exposure, 3rd Edition: How to Shoot Great Photographs with Any Camera they purchased on February 25, 2012, for $15.98 are ordinary and necessary business expenses with respect to Mrs. Baham's 2012 Schedule C photography activity. Respondent maintains, however, that these expenses are startup expenses and therefore not currently deductible under section 195 but must be capitalized and deducted as provided in section 195(b). Respondent has not conceded petitioners' other claimed expense deductions.

Respondent also disallowed deductions for $29,790 of unreimbursed employee expenses. At trial petitioners restricted their claims to only three categories of expenses relating to their teaching activities: $2,178.63 for animal feed and care; $372.92 for research and literature; and $450 for one-third of the costs of a cell phone. Petitioners conceded respondent's remaining adjustments to their Schedule A expenses. Among those concessions was the deduction of an incorrect amount for Mrs. Baham's union dues expenses. Petitioners' tax return

indicated total expenses of $8,000 for union dues; however, petitioners claim that this amount is incorrect and should be $800 instead. The $7,200 difference was disallowed on examination by respondent and included in the deficiency notice.

Respondent has determined that petitioners owe an accuracy-related section 6662(a) and (b)(1) and (2) penalty for an underpayment due to a substantial understatement of income tax, or alternatively to negligence in failing to maintain adequate records of reported expenses.

## VI.    Petition and Trial

The last day for petitioners to file a petition with this Court was October 22, 2014. Petitioners' petition was signed and dated October 21, 2014. It arrived at this Court by U.S. Postal Service (USPS) first-class mail and was filed on October 28, 2014. The envelope in which the petition arrived bore a shipping label, dated October 22, 2014, printed from Endicia.com, with both USPS and Endicia logos upon it. The shipping label also included a USPS Certified Mail barcode with the following 22-digit tracking number: 9407 1102 0088 1362 6982 67.

Trial in this case was held on December 10, 2015, in Los Angeles, California. At trial Mr. Baham represented himself and Mrs. Baham.[5] In addition

---

[5]Although there is nothing in the record to establish the extent of Mr. Baham's authority to represent his wife, respondent has not challenged it, nor has

(continued...)

to a joint stipulation of facts with accompanying exhibits lodged with the Court and entered into evidence, petitioners introduced two additional exhibits, one with receipts and bank statements, and the other with a Monrovia High School District and Teachers Association Contract. Mr. Baham called himself as a witness and testified on the record. Portions of his testimony are incorporated herein.

VII. PostTrial Matters

On February 23, 2016, respondent filed his brief in the case. Petitioners have failed to file any briefs. On May 23, 2016, the Court sua sponte raised the question of whether petitioners timely filed their petition and therefore whether the Court has jurisdiction over the matter; the Court ordered the parties to file briefs on the issue. Respondent filed his brief on June 3, 2016. Petitioners did not respond to the Court's order.

In an order issued June 17, 2016, the Court took judicial notice of the USPS tracking information for the petition and the Frequently Asked Questions on the

---

[5](...continued)
respondent moved to dismiss Mrs. Baham from this case for lack of prosecution. Even were we to dismiss her, a decision would still be entered for a deficiency and penalty in the same amounts as for Mr. Baham, see, e.g., Bigdeli v. Commissioner, T.C. Memo. 2013-148, at *5, and the outcome remain unchanged.

USPS website.[6] The tracking information obtained from USPS indicated that

"pre-shipment information" was sent to the USPS on October 23, 2014, but no

---

[6]A court may take judicial notice of appropriate adjudicative facts at any stage in a proceeding, whether or not such notice is requested by the parties. See Fed. R. Evid. 201(c); see also United States v. Harris, 331 F.2d 600, 601 (6th Cir. 1964) (explaining that a court may take judicial notice sua sponte). In general, a court may note facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Information posted on a governmental agency's official website may be appropriate for judicial notice. See, e.g., Marshek v. Eichenlaub, 266 F. App'x 392, 392 (6th Cir. 2008); Denius v. Dunlap, 330 F.3d 919, 926-927 (7th Cir. 2003) (holding it proper to take judicial notice of information on an official website of a Federal agency that maintained medical records on retired military personnel because such fact was not subject to reasonable dispute). Thus, this Court has held that government websites are self-authenticating if government sponsorship can be verified by visiting the site. See Cave Buttes, L.L.C. v. Commissioner, 147 T.C. 338, 362 (2016).

Federal courts have, under the authority of Fed. R. Evid. 201(c), also sua sponte noted adjudicative facts by accessing information on various public bodies' websites and that of at least one private sector organization, the Financial Accounting Standards Board (FASB), which describes itself as "the designated organization in the private sector for establishing standards of financial accounting that govern the preparation of financial reports by nongovernmental entities." See In re Charles Schwab Corp. Sec. Litig., 257 F.R.D. 534, 561 n.18 (N.D. Cal. 2009) ("Surprisingly, neither side offered the FASB concepts at issue for judicial notice, but because the concepts are publicly available from the FASB's website, this order nevertheless takes judicial notice of FASB Statement of Financial Accounting Concept No. 1 pursuant to FRE 201."); Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein, 299 B.R. 211, 233 n.26 (Bankr. N.D. Ill. 2003) (taking judicial notice sua sponte of the fact that the debtor "was admitted to practice law in Illinois in 1962" by looking up his record on the website of the Attorney Registration and Disciplinary Commission, an administrative agency of the Supreme Court of Illinois), aff'd per opinion and order, 2004WL 2075442 (N.D. Ill. Aug. 31, 2004).

time was listed.  The USPS Frequently Asked Questions page titled "USPS.com

Tracking Updates" indicates that "pre-shipment" displays when information about

the package has been provided to USPS but the package has not yet been

processed through the USPS network.  USPS.com Tracking Updates, U.S. Postal

Serv., http://faq.usps.com/?articleId=220964 (last visited June 17, 2016).  The

petition's tracking information further indicated that the petition was "accepted"

by USPS at 8:03 a.m. in Arcadia, California, ZIP Code 91006, on October 23,

2014.  USPS provides a status of accepted "when an item has been physically

tendered to the Postal Service."  Id.

To establish the petition's timely mailing, the Court reopened the record to

allow petitioners to introduce evidence to that effect.[7]  After a hearing in

December 2016 and petitioners' furnishing of a UPS Store receipt and shipping

label, each dated October 22, 2014, the parties on January 23, 2017, filed a joint

---

[7]Although the Federal Courts of Appeals have split on the issue, see, e.g., Herrera v. Commissioner, T.C. Memo. 2012-308, at \*20 (discussing the Circuit split), the Court of Appeals for the Ninth Circuit, to which this case would be appealable could it be appealed, has allowed the admission of extrinsic evidence to prove the timely mailing of a document under sec. 7502.  See Anderson v. United States, 966 F.2d 487, 489-491 (9th Cir. 1992).  Absent compelling reasons to do otherwise, this Court applies the law in a manner consistent with the holdings of the Court of Appeals to which an appeal of its decision would lie, Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971), even in cases subject to sec. 7463(b).

supplemental stipulation of facts.[8]  The parties stipulated that petitioners deposited the envelope containing their petition with The UPS Store in Arcadia, California, at 2:44 p.m. on October 22, 2014, to be mailed by certified mail to the Court.  The parties further stipulated that the envelope containing petitioners' petition was mailed via USPS certified mail in an envelope containing the same tracking number as that on the shipping label provided by The UPS Store.

On December 23, 2016, respondent's counsel contacted the Arcadia, California, branch of The UPS Store and was informed that the branch's regular practice is to deliver all parcels in their custody that are to be mailed by USPS into USPS custody at the U.S. Post Office in Arcadia, California, each day at 5 p.m. The parties therefore stipulated that petitioners deposited the envelope containing their petition with the Arcadia, California, branch of The UPS Store at 2:44 p.m. on October 22, 2014, and paid the appropriate postage to mail the envelope via USPS certified mail to the Court, and that thereafter an employee of the branch deposited petitioners' envelope with USPS at the U.S. Post Office in Arcadia, California, at or about 5 p.m. on October 22, 2014.

---

[8]We note that while the parties cannot stipulate jurisdiction, they "may agree on the facts that determine jurisdiction." Pearson v. Commissioner, 149 T.C. ___, ___ (slip op. at 13) (Nov. 29, 2017) (quoting Tilden v. Commissioner, 846 F.3d 882, 887 (7th Cir. 2017), rev'g T.C. Memo. 2015-188).

## Discussion

I. Jurisdiction

A. Generally

The Tax Court is a court of limited jurisdiction and may exercise jurisdiction only where Congress has expressly granted it. See sec. 7442; Breman v. Commissioner, 66 T.C. 61, 66 (1976). The Court's jurisdiction depends on a valid statutory notice of deficiency and a timely filed petition. Pietanza v. Commissioner, 92 T.C. 729, 735 (1989), aff'd without published opinion, 935 F.2d 1282 (3d Cir. 1991); Pyo v. Commissioner, 83 T.C. 626, 632 (1984); see also Rule 13(c). Thus, section 6213(a) provides that a petition must be filed with the Court within 90 days, or 150 days if the notice of deficiency is addressed to a person outside the United States, after the notice is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day). The Court has no authority to extend this 90-day (or 150-day, as the case may be) period. Joannou v. Commissioner, 33 T.C. 868, 869 (1960). However, if the conditions of section 7502, known as the "mailbox rule", are satisfied, a petition which is timely mailed may be treated as having been timely filed. We examine the mailbox rule at greater length below.

It is well settled that this Court has an independent obligation and the jurisdiction to determine at any time whether it has jurisdiction in a case. Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999, 1002 (1978); Watkins v. Commissioner, T.C. Memo. 2014-197, at *17 n.7 (citing Henderson v. Shinseki, 562 U.S. 428, 434 (2011)); see also Sarkissian v. Commissioner, T.C. Memo. 2012-278, at *8, aff'd without published opinion, 604 F. App'x 616 (9th Cir. 2015). The Court can question jurisdiction sua sponte at any time, even after a case has been tried and briefed. Neely v. Commissioner, 115 T.C. 287, 290-292 (2000). The Court has no authority to extend that period provided by law for filing a petition "whatever the equities of a particular case may be and regardless of the cause for its not being filed within the required period." Axe v. Commissioner, 58 T.C. 256, 259 (1972). Moreover, the Court's jurisdiction cannot be enlarged by the parties' agreement, or waiver, or failure to object. Romann v. Commissioner, 111 T.C. 273, 281 (1998). Jurisdiction must be shown affirmatively, and petitioners, as the party invoking our jurisdiction in the case at bar, bear the burden of proving that we have jurisdiction over their case; petitioners must establish affirmatively all facts determining jurisdiction. David Dung Le, M.D., Inc. v. Commissioner, 114 T.C. 268, 270 (2000), aff'd, 22 F. App'x 837 (9th Cir. 2001). Accordingly, petitioners need to establish that the

petition was properly mailed to or filed with this Court within the required period, or this case must be dismissed for want of jurisdiction.

B.     The Mailbox Rule

Section 7502(a)(1) provides that if a document to be filed is delivered by U.S. mail to the appropriate agency, officer, or office after the date prescribed for filing, then the date of the U.S. postmark on the cover in which the document was mailed is deemed the date of delivery.  This "mailbox rule" applies only if:  (1) the postmark date falls on or before the date prescribed for filing and (2) the document was deposited in the U.S. mail on or before that prescribed date.  Sec. 7502(a)(2). The Secretary is authorized to promulgate regulations relating to postmarks not made by USPS.  Sec. 7502(b).

Section 301.7502-1(c)(1), Proced. & Admin. Regs., requires that the document:  (1) be contained in a properly addressed envelope; (2) be deposited within the prescribed time in the mail in the United States with sufficient postage prepaid; and (3) bear a postmark.  In the case of registered or certified mail, the date of registration or the date of the U.S. postmark by a postal employee on the certified mail receipt, respectively, is treated as the postmark date of the mailed document.  Sec. 301.7502-1(c)(2), Proced. & Admin. Regs.

If the postmark on the envelope is made by the USPS, the postmark "must bear a date on or before the last date, or the last day of the period, prescribed for filing the document". Sec. 301.7502-1(c)(1)(iii)(A), Proced. & Admin. Regs. If the envelope does not bear a postmark dated on or before the last date prescribed for filing, the document is not considered timely. Id. Thus, "the sender who relies upon the applicability of section 7502 assumes the risk that the postmark will bear a date on or before the last date * * * prescribed for filing the document". Id. The use of registered or certified mail may obviate this risk. Id. If the envelope contains a timely USPS postmark but arrives "after the time when a document or payment postmarked and mailed at that time would ordinarily be received, the sender may be required to prove that it was timely mailed." Id.

If the envelope containing the mailed document bears a non-USPS postmark: (1) the postmark must bear a legible date on or before the last date prescribed for filing that document; and (2) the document must be received by the addressee "not later than the time when a document * * * contained in an envelope that is properly addressed, mailed, and sent by the same class of mail would ordinarily be received if it were postmarked at the same point of origin by the U.S Postal Service on the last date, or the last day of the period, prescribed for filing the document". Id. subdiv. (iii)(B)(1)(ii).

If the document is received after the time it would ordinarily be received if postmarked by USPS, the mailbox rule may still apply if it is established: (1) that the document "was actually deposited in the U.S. mail before the last collection of mail from the place of deposit that was postmarked (except for the metered mail) by the U.S. Postal Service on or before the last date, or the last day of the period, prescribed for filing the document"; (2) that the delay in receiving the document was due to a delay in the transmission of the U.S. mail; and (3) the cause of the delay. Sec. 301.7502-1(c)(1)(iii)(B)(2)(i), Proced. & Admin. Regs.

If the envelope containing the document to be filed bears both a USPS and a non-USPS postmark, then the non-USPS postmark is disregarded. Id. subdiv. (iii)(B)(3).

C.     Application of the Mailbox Rule to the Instant Case

As noted above, after challenging its jurisdiction sua sponte, the Court reopened the record in this case to allow petitioners a chance to establish that this Court has jurisdiction to hear their case. We are satisfied that we do.

The last date for petitioners to file their petition was October 22, 2014. The Court received the petition on October 28, 2014. While the petition arrived at the Court after the last date prescribed for filing, it is considered timely if it satisfies the requirements of the mailbox rule, under which if a document is delivered after

the date prescribed for filing, the date of the postmark on the envelope is deemed the date of delivery. Sec. 7502(a)(1). This rule applies only if the postmark falls on or before the date prescribed for filing and the document was deposited in the U.S. mail on or before that prescribed date. Sec. 7502(b).

Petitioners have established convincingly that the mailbox rule applies here. What caused this Court to question its jurisdiction was the absence of a USPS postmark on the envelope in which the petition arrived. The envelope instead bore a non-USPS postmark showing a date of October 22, 2014. This, with tracking information wherein the first item was dated October 23, 2014, introduced sufficient doubt as to the petition's timeliness to warrant further investigation. There was no question that the envelope containing the petition fulfilled two of the three criteria of section 301.7502-1(c)(1), Proced. & Admin. Regs.: It was properly addressed, it bore a non-USPS postmark with a legible date on or before the last date prescribed for filing the petition, and it was received by the Court not later than the time it would have been expected to arrive were it postmarked by USPS directly. Yet initially it was not clear whether the petition had been deposited in the U.S. mail within the prescribed time with sufficient postage prepaid. See id. subdiv. (ii).

Petitioners, to bear their burden of proving our jurisdiction over their case, see David Dung Le, M.D., Inc. v. Commissioner, 114 T.C. at 270, submitted a receipt from The UPS Store showing that they had in fact mailed their petition on October 22, 2014. Moreover, petitioners and respondent jointly stipulated that not only did petitioners deposit their petition with The UPS Store on that date, and pay the appropriate postage to mail the envelope via USPS certified mail to the Court, but an employee of The UPS Store then deposited the envelope containing the petition with USPS on that same day. Thus petitioners have adduced sufficient facts to affirmatively establish this Court's jurisdiction over their case, see id., allowing us to turn to its merits.

II.    Deductibility of Petitioners' Expenses

A.    Overview

We now turn to matters of substantiation relating to petitioners' reported Schedule C expenses and unreimbursed employee expenses.

The Commissioner's determination of a taxpayer's tax liability is generally presumed correct, and the taxpayer bears the burden of proving the determination improper. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and taxpayers are burdened with proving their entitlement to any claimed deduction. INDOPCO, Inc. v.

Commissioner, 503 U.S. 79, 84 (1992). Thus, taxpayers must affirmatively establish the validity of each claimed deduction by identifying it and showing that their expense satisfies the requirements for deductibility. Roberts v. Commissioner, 62 T.C. 834, 836-837 (1974). A necessary condition is that taxpayers keep adequate records substantiating their claimed deductions. See sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

Nonetheless, in certain cases, if a taxpayer claims a deduction but cannot substantiate the underlying expense fully, the Court "should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We cannot, however, create deductions out of whole cloth-- there must be "some basis on which an estimate may be made." Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985) (citing Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957)).

Under section 162(a), a taxpayer is entitled to deduct all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business. An expense is ordinary if it is normal, usual, or customary in the taxpayer's trade or business, and it is necessary if appropriate or helpful for such business. See, e.g., Boser v. Commissioner, 77 T.C. 1124, 1132 (1981),

revised, 79 T.C. II (1982), aff'd without published opinion (9th Cir. Dec. 22, 1983).  Generally, personal, living, or family expenses are not deductible.  Sec. 262(a).

Section 274(d) disallows a deduction or credit, unless adequately substantiated, for traveling expenses, entertainment, amusement, recreation, expenses for gifts, and expenses related to "listed property" as defined in section 280F(d)(4) (passenger automobiles and other property used for transportation, property of a type used for entertainment or recreation, and computers or peripheral equipment).  Substantiation should include:  (1) the amount of the expense, (2) the time and place of the expenditure, (3) the business purpose of the expense, and (4) the business relationship to the taxpayer of persons benefiting from the expenditure.  Sec. 274(d).  The Court may not estimate expenses under Cohan in situations where section 274 requires specific substantiation.  Lewis v. Commissioner, 560 F.2d 973, 977 (9th Cir. 1977), rev'g on other grounds T.C. Memo. 1974-59.

Taxpayers may deduct unreimbursed employee expenses paid or incurred in carrying on a trade or business under section 162 as ordinary and necessary business expenses.  Lucas v. Commissioner, 79 T.C. 1, 6-7 (1982).  A taxpayer may be in the trade or business of being an employee.  O'Malley v. Commissioner,

91 T.C. 352, 363-364 (1988); see also Primuth v. Commissioner, 54 T.C. 374, 377 (1970). An unreimbursed expense is deductible only when it is unreimbursable by the taxpayer's employer even if reimbursement has been requested. Podems v. Commissioner, 24 T.C. 21, 23 (1955).

In the case of expenses paid or incurred in connection with books, supplies, computers and other equipment, and supplementary materials used by an eligible educator in the classroom, the first $250 of such deductions is subtracted from gross income to determine the taxpayer's adjusted gross income. Sec. 62(a)(2)(D). Any substantiated expenses after the first $250 that relate to a taxpayer's employment as a teacher are allowed as unreimbursed employee expenses. Farias v. Commissioner, T.C. Memo. 2011-248, 2011 WL 5041356, at *4. For a teacher to deduct expenses for teaching supplies, the supplies must be directly related to the taxpayer's job as a teacher and a necessary expense of being a teacher, not just be helpful to students and appropriate for classroom use. Id. (citing Welch v. Helvering, 290 U.S. at 113-114, and Wheatland v. Commissioner, T.C. Memo. 1964-95). Unreimbursed employee expenses are subject to the 2% adjusted gross income floor on miscellaneous itemized deductions. Sec. 67(a).

B.      Petitioners' Claimed Schedule C Expense Deductions

Petitioners have conceded all of their claimed deductions related to Mrs. Baham's photography business, with the exception of seven categories of expenses totaling $7,586.64. These categories and respective amounts are: $3,071.95 for a Canon EOS-1Ds Mark III body; $2,187.53 for home renovations; $44.62 for shipping; $655.17 for products; $1,000.12 for props and accessories; $177.25 for literature, conference, and web costs; and $450 for one-third of the annual cost of cell phone expenses. We address each in order, deciding whether the expenses are ordinary and necessary business expenses. We then turn to the question of whether they are immediately deductible or are startup expenditures that must be capitalized under section 195.

1.      Canon Camera

The parties agree that the $3,071.95 that petitioners paid for the Canon camera on June 25, 2012, substantiated by a receipt printed from AmazonSmile, is an ordinary and necessary business expense with respect to Mrs. Baham's 2012 Schedule C photography activity. We see no reason to challenge respondent's concession of this expense.

2.    Home Renovations

Respondent argues that petitioners offered no documentary evidence to substantiate their entitlement to the Schedule C expense deductions disallowed in the notice of deficiency, other than a summary sheet, two invoices, and redacted bank statements.  Petitioners did not testify about the specific expenses shown on the bank statements they provided.  Petitioners claim that the charges on their bank statements in 2012, predominantly from The Home Depot, relate to their home renovations and repairs and maintenance in connection with converting a room in their home into a photography office.  Respondent maintains, however, that petitioners have not provided copies of any receipts or invoices to substantiate their expenses, nor photographs to demonstrate their home renovations.  Absent receipts or invoices, respondent contends, there is no way of knowing what The Home Depot charges represent or whether the expenses were paid and incurred in connection with Mrs. Baham's photography activity.

We note that although the sum total of The Home Depot charges on their bank statements was $2,094.37, petitioners deducted $2,187.53 for home renovations.  Petitioners have not explained this discrepancy, but Mr. Baham did testify at trial that some of the renovation purchases were in cash and some might have been charged to a credit card.  Moreover, one of the charges on petitioners'

bank statements, in the amount of $120, was from Dunn & Olsen Carpet in Temple City, California, and Mr. Baham indicated at trial that the room which was converted to an office and photography studio for Mrs. Baham was recarpeted. Therefore, it is plausible that petitioners did spend the $2,187.53 they claim.

Yet, as respondent asserts, in the absence of receipts or other evidence, it is difficult to say how much of the $2,187.53 in dispute was spent on renovations related to Mrs. Baham's photography studio.  Furthermore, as respondent urges and we agree, it appears that petitioners double-counted their renovation expenses by including them in both line 22 of Mrs. Baham's Schedule C as part of "supplies" and line 30 of the Schedule C as expenses for the business use of petitioners' home, the latter of which were allowed by respondent on examination and are not in dispute.  At trial, Mr. Baham testified that he may have made a mistake in his use of tax software to prepare his returns and allowed that the expenses could be one and the same.

In view of the above, we conclude that petitioners have not established by a preponderance of the evidence that the $2,187.53 for home renovations was ordinary and necessary business expenses that they had not already deducted elsewhere on their Federal income tax return.  Consequently, they are not entitled to deduct that amount.

3.    Shipping

Petitioners claim that they incurred shipping expenses of $44.62 for pictures and frames during 2012.  Respondent points out that petitioners did not provide copies of receipts or invoices related to these expenses.  However, respondent in his brief, beyond stating in a heading that "Petitioners are not entitled to shipping, products, props and accessories, and literature/conference/web expenses", does not address the shipping expenditures specifically.  We infer that respondent believes the Court should deny petitioners' claimed deduction for shipping expenses because of a lack of substantiation.

We agree.  While petitioners' statements do establish that they spent $44.62 at The UPS Store, in the absence of receipts, invoices, or other dispositive evidence it is impossible for us to determine with any certainty the nature of the expenses and whether they were paid in connection with Mrs. Baham's photography business or for some other purpose.  Further, Mr. Baham's testimony at trial suggested that the shipping expenses were incurred in connection with the receipt by Mrs. Baham of pictures and frames, which strikes us as implausible.  It is unlikely that petitioners would pay The UPS Store in their hometown directly for shipping costs connected with their receipt of items.  It is more plausible that these shipping costs were paid in connection with their mailing of items, but we

cannot establish this from the record in this case. Accordingly, we find that petitioners are not entitled to deduct their claimed shipping expenses.

4.    Products

Petitioners claim that they paid $655.17 for products related to Mrs. Baham's photography business. Mr. Baham testified at trial that within this category are charges, appearing on petitioners' bank statements, from Aaron Brothers for frames and similar products, My Publisher for publishing, Samy's Camera for additional equipment (a lens cover or a filter), and Miller's M-Pics for printing photographs. Respondent argues that petitioners did not provide copies of receipts or invoices to substantiate these purchases, nor did they provide photographs of the products. In the absence of these, respondent correctly contends, petitioners' bank statements substantiate nothing more than that petitioners made purchases at these stores. Respondent also points out that at least some total expense category sums in the bank statements are smaller than the claimed deductions.

We agree with respondent on the latter point: Petitioners' bank statements show charges of $78.30 from Aaron Brothers, $221.84 from My Publisher, $34.27 from Samy's Camera, and $44.52 from Miller's M-Pics, which total $378.93. We are not persuaded, however, that petitioners have wholly failed to substantiate

these expenses. The charges on the bank statement, along with Mr. Baham's testimony, in our estimation credibly establish that the nature of these payments falls into the category of ordinary and necessary business expenses. Mrs. Baham was endeavoring to establish her photography business, and it is natural that she would procure the products described.

However, respondent has pointed out that during the audit petitioners were allowed a deduction of $830 for Schedule C office expenses; and since petitioners cannot identify the specific items underlying those expenses, they cannot establish that they have not already deducted their claimed products expenses. The burden of proving entitlement to deductions falls upon petitioners; and since they are unable to prove that they have not already been allowed a deduction for the photography products, we find that they are not entitled to deduct the claimed products expenses disputed here.

### 5.    Props and Accessories

Petitioners claim that they paid $1,000.12 for props and accessories, which Mr. Baham testified included items such as a stool or fainting couch, clothing for photography sessions, and reflectors. Mr. Baham explained that these purchases were made at Wal-Mart, Cost Plus, and World Market. Petitioners' bank statements show charges of $77.73 at Wal-Mart, $54.26 at Cost Plus, and $39.11

at World Market, which total $171.10, a number substantially less than the $1,000.12 claimed. Respondent contends that, as with the products expenses, these purchases are not deductible because petitioners did not provide receipts or other evidence to substantiate the specific items purchased, and they have not established that deductions for any of the purchases were not already allowed during audit.

We agree with respondent. Items such as furniture or clothing may be used for nonphotography purposes, and petitioners did not establish that these items were not so used. Light reflectors could plausibly be limited in use to photography sessions. However, the merchants identified specifically by petitioners stock many items, and it is impossible to draw a direct link between the items petitioners claim they purchased and the charges as they appear in the statements. Moreover, the $830 for office expense deductions respondent allowed on audit is substantial enough to accommodate both the $378.93 specifically identified by petitioners as products expenses and the $171.10 specifically identified as props and accessories expenses. Accordingly, we find that petitioners are not entitled to deduct their claimed props and accessories expenses.

### 6. Literature, Conference, and Web Costs

Petitioners claim that they are entitled to $177.25 for literature, conference, and web costs. "Literature" includes a book entitled Understanding Exposure, 3rd Edition: How to Shoot Great Photographs with Any Camera, bought on Amazon for $15.98 and conceded by respondent to be an ordinary and necessary business expense. Conference expenses include $75 spent on "Beginning Portraiture", arranged through a service called Eventbrite. Web costs include charges on petitioners' bank statements from Snapfish, Zen Folio, and Life Touch, which were $13.61, $25, and $27. Respondent argues that, with the exception of the book purchase which he has already conceded, petitioners did not provide copies of receipts or invoices related to these reported expenses. Moreover, respondent maintains that petitioners do not know whether the web expenses had already been included among the $650 allowed as a Schedule C advertising expense deduction.

With respect to the web expenses, Mr. Baham testified at trial that it is possible those expenses were included in the $650 allowed as a deduction for advertising expenses. In view of that, we will not allow a deduction, since these expenses may have been deducted already.

With respect to the conference on Beginning Portraiture, we think the charge on petitioners' bank statements does substantiate adequately the nature of

the expense. Since Mrs. Baham was establishing herself as a photographer, we accept that a conference on portraiture was an ordinary and necessary business expense. Therefore, we believe petitioners have substantiated as ordinary and necessary $75 of conference costs and $15.98 of literature expenses, the latter item having been conceded by respondent.

### 7. Cell Phone

Petitioners claim they are entitled to deduct $450 for cell phone expenses, a figure they estimated by taking one-third of their annual cellular phone bill, which they approximated at $1,350. The other two-thirds were allocated to business and personal use. The monthly charge for Verizon on petitioners' bank statements was $172.14, which annualized equaled $2,065.68; thus, petitioners claimed a smaller amount than one-third of their actual annual charges. Respondent, however, submits that petitioners did not provide copies of billing statements for their reported cell phone expenses. Therefore, he urges, petitioners have not established the actual amount attributable to Mrs. Baham's school use, compared with other uses and lines included in the plan. Moreover, respondent argues, relying on Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946) ("The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him,

gives rise to the presumption that if produced it would be unfavorable."), aff'd, 162 F.2d 513 (10th Cir. 1947), that petitioners could have obtained their monthly cell phone statements, and their failure to do so undermines their entitlement to the claimed expenses.

We agree with respondent. While petitioners have established that they paid a certain amount as cellular phone expenses, that is the only thing they have been able to establish. Mr. Baham testified that he trifurcated the cell phone bill into equal parts, but this was only an estimate; and petitioners did not have any records establishing a more exact allocation. Indeed, aside from this rough estimate, there is no indication in the record of the extent, if any, to which Mrs. Baham used her cell phone in her photography business. There is no evidentiary basis for applying the Cohan rule to Mrs. Baham's cell phone expenses. See, e.g., Windham v. Commissioner, T.C. Memo. 2017-68, at *23-*24 ("While petitioner testified that she used her cell phone for her brokerage work, for her rental real estate activities, and for the charities for which she volunteered, she offered no testimony or other evidence delineating how many cell phone minutes were used for business calls, charity calls, or personal calls. Petitioner has provided no evidentiary basis for applying the Cohan rule to her cell phone expenses." (citing Vanicek v. Commissioner, 85 T.C. at 742-743)). Petitioners have not carried their burden of

proving that these expenses were attributable to a trade or business. Accordingly, they are not entitled to deduct their claimed cell phone expenses.

8.      Whether the Allowed Expenses Are Startup Costs

We have determined that petitioners are entitled to treat $3,071.95 for the Canon camera body, $75 for conference costs, and $15.98 for a book on photography, totaling $3,162.93, as ordinary and necessary business expenses. Respondent argues, however, that all substantiated expenses related to Mrs. Baham's photography business are nondeductible startup expenses.

Respondent points out that no current deduction is allowed unless the trade or business was functioning as a business at the time the taxpayer incurred the expenses. See Hardy v. Commissioner, 93 T.C. 684, 687 (1989), aff'd in part, remanded in part, 1990 U.S. App. Lexis 19670 (10th Cir. Oct. 29, 1990). Whether a taxpayer is actively engaged in a trade or business depends on the facts and circumstances, with a special focus on the following three indicators: (1) whether the taxpayer undertook the activity intending to earn a profit; (2) whether the taxpayer is regularly and actively involved in the activity; and (3) whether the taxpayer's activity has actually commenced. See, e.g., Woody v. Commissioner, T.C. Memo. 2009-93, 2009 WL 1230790, at *4, aff'd, 403 F. App'x 519 (D.C. Cir. 2010). Otherwise, any ordinary and necessary business expenses are treated as

"pre-opening expenses" and must be capitalized. Hardy v. Commissioner, 93 T.C. at 687-690. This rule is codified under section 195(a), pursuant to which "no deduction shall be allowed for start-up expenditures." A startup expenditure is any amount paid or incurred in connection with: (1) investigating the creation or acquisition of an active trade or business, (2) creating an active trade or business, or (3) any activity engaged in for profit and for the production of income before the day on which the active trade or business begins in anticipation of such activity becoming an active trade or business. Sec. 195(c)(1). In all instances, the amount in question must be allowable as a deduction in the case of an existing active trade or business. Id.

However, under section 195(b), taxpayers may elect to deduct for the taxable year in which the active trade or business begins up to $5,000 of startup expenditures, reduced by the amount by which those expenditures exceed $50,000. The remainder is allowable as a deduction ratably over the 180-month period beginning with the month in which the active trade or business begins. Sec. 195(b). This election must be made no later than the time prescribed for filing the return for the taxable year in which the trade or business begins. Sec. 195(d)(1). Section 1.195-1(b), Income Tax Regs., provides that a "taxpayer is deemed to have made an election under section 195(b) to amortize start-up expenditures as defined

in section 195(c)(1) for the taxable year in which the active trade or business to which the expenditures relate begins." A taxpayer may forgo this deemed election by affirmatively electing to capitalize startup expenditures on a timely filed return for that year. Id. Thus, if Mrs. Baham's photography business became an active trade or business in 2012, petitioners would be deemed to have made the section 195(b) election and be able to deduct up to $5,000 of their startup expenditures for that year and to amortize the remainder. The key question is when the business became active.

Respondent argues that Mrs. Baham's photography business was not an active trade or business in 2012. He points out that Mrs. Baham took a photography course in college but otherwise pursued a career as a teacher. Respondent contends that Mrs. Baham's photography activities in 2012 were at best cursory, and there is nothing in the record to support the contention that Mrs. Baham's limited activities constituted a going trade or business in 2012. Respondent points to the absence of a client list, invoice, budget, business plan, advertisement, business card, website address, or other document. According to him, the record tends to support the contention that petitioners' substantiated photography expenses are startup expenses. Home renovations and the purchase of a digital camera would generally be the types of expenses one would expect to

incur in creating a photography business. Therefore, respondent maintains that even if petitioners' reported expenses were substantiated, they would be nondeductible startup costs; and even if the photography business was a going concern in 2012, petitioners' allowable Schedule C expense deductions would be limited to the amounts allowed to be deducted under section 195(b).

We believe petitioners have satisfied their burden of establishing that the photography business became an active trade or business in 2012. Before 2012, Mrs. Baham did not engage professionally in photography, even though she did take photographs of family and friends. However, in 2012 she decided to pursue photography professionally and began charging for her services. That year, petitioners began converting one of the rooms in their house into a photography studio for Mrs. Baham. Although renovations continued throughout the year, the room was used as a photography den as early as January or February 2012. Mrs. Baham held three photo shoots in 2012. For her first client, her martial arts instructor, she undertook a maternity shoot in the spring of 2012, with an infant shoot following later in the year. This was a paying client. Mrs. Baham also conducted an engagement shoot for Mr. Baham's younger sister, although Mrs. Baham did not charge her sister-in-law for the session.

In the light of the above facts, we find that Mrs. Baham did indeed begin an active trade or business in 2012. As evidenced by her charging for the maternity and infant shoots (and her charging clients in later years), she undertook the activity intending to earn a profit. See Woody v. Commissioner, 2009 WL 1230790, at *4. Even though teaching was Mrs. Baham's primary day job, she engaged in photography in the evenings and on weekends, which in our estimation constitutes regular and active involvement. See id. She engaged in photography with continuity and regularity. See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). As evidenced by petitioners' investment of time and treasure throughout 2012 and Mrs. Baham's desire to earn revenue, her photography rose beyond simply a "sporadic activity, a hobby, or an amusement diversion". See id. We think it fair to state that her activities commenced with the several photo shoots she conducted in 2012. See id. It is not fatal that business was not booming. Many entrepreneurs struggle to earn revenue early in their business ventures, but their expenses are none the less deductible.

What is important is that Mrs. Baham regularly and actively began performing photography services in 2012. The possible lack of published information about pricing is not a determinative factor since the record establishes that she did indeed charge for her services. Moreover, it is not upon us to question

Mrs. Baham's judgment as to the utility and extent of advertising needed for her business. While advertising is a factor that we may consider in determining whether an active trade or business has commenced, its absence does not necessarily prove the inverse. We also note that respondent did allow a deduction of $650 for advertising expenses on Mrs. Baham's Schedule C, making respondent's assertion that advertising was absent at least somewhat implausible.

Since petitioners are unable to provide detailed information about the specific dates of the photo shoots, we cannot identify a particular date when Mrs. Baham's photography business became active. However, on the weight of the evidence we conclude that the business did become active in 2012. Even bearing heavily against petitioners, whose inexactitude was of their own making, see Cohan v. Commissioner, 39 F.2d at 543-544, we conclude that Mrs. Baham's photography business was active by no later than on or before December 31, 2012.

Accordingly, pursuant to section 1.195-1(b), Income Tax Regs., petitioners are deemed to have made the election to amortize startup expenditures under section 195(b) for 2012. We determined that petitioners have substantiated $3,162.93 as ordinary and necessary business expenses. Since section 195(b)(1) allows for the immediate deduction of up to $5,000 of startup expenditures for the taxable year in which the active trade or business began, and since respondent has

allowed deductions for $2,200 of petitioners' reported Schedule C expenses on audit, petitioners are entitled to deduct an additional $2,800 of expenses for the 2012 taxable year and may amortize the remaining balance of $362.93. This balance is deductible ratably over the 180-month period beginning with the month in which Mrs. Baham's active trade or business began. Although petitioners are unable to provide specific dates for photo shoots, since we determined that Mrs. Baham's business was active no later than December 31, 2012, for purposes of computing the ratable deduction of the amortized $362.93 amount, December 2012 is to be deemed the month in which her active business began.

### C.  Petitioners' Reported Unreimbursed Employee Business Expenses

Petitioners have conceded all of their claimed Schedule A deductions for unreimbursed employee expenses, with the exception of three categories of expenses: $2,178.63 for animal feed and care; $372.92 for research and literature; and $450 for one-third of the cell phone expenses. We address each of these categories in order.

#### 1.  Animal Feed and Care

Mrs. Baham taught zoology and biology throughout 2012. She used live animals in her classroom, a strategy which was not expressly endorsed by her employer, but which she viewed as necessary to engage otherwise potentially

apathetic students. By all accounts, her use of the animals helped to alleviate some of the truancy that might have otherwise resulted. There was no policy by which Mrs. Baham's employer would reimburse teachers when they incurred classroom expenses on their own account. The classroom animals remained at school during the academic year, but Mrs. Baham took them home for the summer, evidently to the chagrin of her children, who were not keen on cleaning up after the animals.

While petitioners seek to deduct certain of their expenses related to these animals, respondent points out that in 2012 petitioners had a miniature collie and paid their family pet's costs in the same manner as their other expenses. Petitioners have no way to differentiate between the expenses associated with their dog and expenses associated with the classroom animals. Moreover, respondent argues, petitioners cannot establish from their bank statements alone that the particular items purchased constitute ordinary and necessary expenses related to Mrs. Baham's employment as a teacher. Respondent further maintains that, even if petitioners could substantiate their claimed expenses, they have failed to demonstrate that the animals were necessary to Mrs. Baham's teaching activities.

In his trial testimony Mr. Baham identified several charges on petitioners' bank statements which petitioners claim corroborate their expenditures on the

classroom animals: $839.69 at Pet Smart, $126.66 at Petco, $31 at the Duarte Animal Hospital, $71.36 at Whittier Narrows Pet and Feed, and two bird stores (which we infer to be The Feather Farms and Bird Hill Products, where petitioners spent $42.02 and $154.44, respectively). These charges total $1,265.17, an amount smaller than the $2,178.63 reported by petitioners for animal feed and care.

While we agree with respondent that the charges at Pet Smart, Petco, Duarte Animal Hospital, and Whittier Narrows Pet and Feed are too unspecific for us to say definitively that they were spent for business purposes, instead of personal canine-related purposes, cf. sec. 262, we accept that at least the charges at The Feather Farms and Bird Hill Products could plausibly be related to the classroom animals, since petitioners did not own any birds as pets. However, we ultimately concur with respondent that petitioners may not deduct these expenses because petitioners have not shown that the classroom animals were necessary to Mrs. Baham's teaching activity. Cf. Farias v. Commissioner, 2011 WL 5041356, at *4. We do not doubt that the classroom animals were pedagogically helpful to students and appropriate for classroom use, but this is not sufficient to cause these expenses to be deductible as ordinary and necessary business expenses. See id. Petitioners have not satisfactorily shown that the classroom animals were "a

necessary expense of [Mrs. Baham's] being a teacher." See id.; see also Wheatland v. Commissioner, 23 T.C.M. (CCH) 579, 582 ("Schoolteachers may, at times, * * * [provide equipment for classroom use out of their own funds], but they do not do so ordinarily, even though the result might be to enhance their reputations as dedicated teachers. * * * The money may be well spent * * *, but it was not an ordinary expense of carrying on petitioner's business[.]"). Accordingly, we find that petitioners may not deduct the expenses they reported for animal feed and care.

### 2. Research and Literature

Petitioners claimed research and literature expenses of $372.92, evidenced by purchases of $105 at Discovery Science Center, $89 at the Los Angeles Zoo, $180.09 at Ipic Theaters Pasadena, and $18 at AMC Santa Anita (we note that these purchases actually total $392.09). Petitioners assert that Mrs. Baham attended movies because it helped her to engage and connect with her students; Mr. Baham accompanied her. Respondent argues that attending movies had at least a substantial personal component for petitioners, and so these purchases are not deductible. It is not clear from the record why one or both petitioners attended the Discovery Science Center; Mr. Baham testified at trial that petitioners likely did not take their children there with them. As to the Los Angeles Zoo, petitioners

had passes there, but the charge was incurred for an unspecified research activity at the zoo requiring payment of an additional fee; Mr. Baham at trial admitted that people go to the zoo recreationally. In sum, respondent argues that petitioners' claimed research and literature expenses are personal, with the record containing nothing to suggest otherwise. Moreover, respondent maintains, petitioners have not proven that these expenses were ordinary and necessary.

We agree with respondent. All of the expenses in this category are of a type that have an overwhelmingly personal character, which makes them nondeductible under section 262. Even if petitioners' trips to the Discovery Science Center, the Los Angeles Zoo, and movie theaters were helpful to Mrs. Baham's teaching, they were not a necessary expense of being a teacher. At any rate, absent any greater substantiation than petitioners' bank statements, we conclude that the relationship of these expenses to Mrs. Baham's job as a teacher is too attenuated to justify a deduction. Accordingly, we find that petitioners may not deduct the expenses they reported for research and literature.

3.     Cell Phone

Petitioners claim they are entitled to deduct $450 for cell phone expenses, a figure they estimated by taking one-third of their annual cellular phone bill, which they approximated at $1,350. The other two-thirds were allocated to Mrs.

Baham's photography activities and personal use. The monthly charge for Verizon on petitioners' bank statements was $172.14, which annualized equaled $2,065.68; thus, petitioners claimed a deduction for a smaller amount than one-third of their actual charges.

Respondent, however, argues that these cell phone expenses are not deductible for the same reasons discussed above in relation to Mrs. Baham's photography business. He also points out that petitioners have not proven that the cell phone expenses were ordinary and necessary for Mrs. Baham's job as a teacher. At trial Mr. Baham testified that while cell phones were not required of teachers, there was a perceived need to be reachable by phone. Mr. Baham testified that on occasion his wife would receive text messages from her school's principal, along with work-related calls. Mr. Baham also admitted that petitioners have a home phone on which Mrs. Baham could be reached.

We agree with respondent. While petitioners have established that they paid a certain amount as cellular phone expenses, that is the only thing they have been able to establish. Thus, they have not carried their burden of proving that these expenses were attributable to a trade or business. A perceived expectation of availability is not sufficient to undergird the deduction of cell phone expenses as

work related. Accordingly, we find that petitioners are not entitled to deduct their reported cell phone expenses.

III.    Accuracy-Related Penalty

In the notice of deficiency underlying this case, respondent determined that petitioners owe an accuracy-related penalty for an underpayment attributable to a substantial understatement of income tax, or alternatively to their negligence in failing to maintain adequate records of their reported expenses.

Section 6662(a) imposes an accuracy-related penalty equal to 20% of the portion of the underpayment to which section 6662 applies. Section 6662(a) applies to the portion of any underpayment which is attributable to, among other things, a substantial understatement of income tax. See sec. 6662(b)(2). For individual taxpayers an understatement of income tax is substantial for any taxable year if it exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A).

We agree with respondent that there is an underpayment attributable to a substantial understatement of income tax in this case. According to the notice of deficiency, the amount of tax required to be shown on petitioners' 2012 tax return was $19,263, whereas the amount of tax actually shown was $7,050, resulting in an understatement of $12,213. This is a substantial understatement, because it

exceeds the greater of 10% of the tax required to be shown on the return ($1,926.30) or $5,000. We have determined that respondent inappropriately denied $2,800 of petitioners' claimed deductions, plus a ratable fraction of the $362.93 remainder that is to be amortized over 180 months. Even so, this amount is not so large as to reduce petitioners' understatement of income tax to less than $5,000 or 10% of the amount of tax required to be shown on the 2012 Federal income tax return. Petitioners therefore remain liable for a substantial understatement penalty under section 6662(a) and (b)(2), albeit one reduced somewhat by our finding that petitioners are entitled to deduct an additional $2,800 plus the ratable fraction of $362.93.

Nonetheless, an exception to the section 6662(a) penalty is set forth in section 6664(c)(1): "No penalty shall be imposed under section 6662 * * * with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." Section 1.6664-4(b)(1), Income Tax Regs., provides: "The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability."

The evidence adduced in this case reveals a dearth of adequate records and substantiation for reported items. Petitioners used tax software to prepare their returns but did not fully understand the results it produced. Petitioners also admitted to estimating expenses and claiming deductions without verifying the correctness of those amounts by reviewing source documentation. Respondent has met the section 7491(c) burden of production with respect to the penalty. With this threshold showing, the burden shifts to petitioners to establish that they acted with reasonable cause and in good faith as to the deducted items. See Higbee v. Commissioner, 116 T.C. 438, 448 (2001).

Petitioners have introduced no evidence that would excuse them from the accuracy-related penalty. During trial Mr. Baham acknowledged that he had only the limited records he entered into evidence and stated that petitioners "didn't do a very good job and * * * didn't expect to be audited". He proceeded to summarize that petitioners had done the best they could but ended up estimating many of their reported expenses. Petitioners relied on their tax preparation software but should have understood that the program's accuracy depended on the entry of correct information. Unfortunately petitioners took no steps to alleviate their confusion with their tax situation or ascertain the correct amount of tax due, such as by consulting a tax professional. Cf. sec. 1.6664-4(c), Income Tax Regs.

Notwithstanding petitioners' professed belief that they were doing what they thought right--which at best indicates only good faith--they failed to apply any but the most cursory effort to determine their proper tax liability.[9] Cf. sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners, having failed to establish reasonable cause are liable for the section 6662(a) and (b)(2) accuracy-related penalty for an underpayment attributable to a substantial understatement of income tax.

IV.    Conclusion

We have determined that petitioners are entitled to deduct an additional $2,800--and to amortize $362.93 over 180 months beginning with December 2012--as ordinary and necessary business expenses in connection with Mrs. Baham's photography business. Otherwise, respondent's adjustments to petitioners' 2012 Federal income tax return are sustained. Petitioners might well have avoided the denial of some of their claimed deductions had they maintained better records, taking special care to keep receipts related to their trade or business

---

[9]This coincidentally places petitioners' conduct within the statutory definition of negligence for purposes of the sec. 6662 accuracy-related penalty, which "includes any failure to make a reasonable attempt to comply with the provisions of [the Code]". Sec. 6662(c). We need not address this alternative ground further, however, because the substantial understatement ground is sufficient for the penalty's imposition in this case.

expenditures, as required by section 6001.  See also sec. 1.6001-1(a), (e), Income Tax Regs.  For the future petitioners are advised that they can minimize penalties through proper evaluation of their claimed deductions and adequate substantiation. Cf. sec. 1.6662-3(b)(1), Income Tax Regs. ("'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.").  We add that this Court's decision is not predicated upon petitioners' lack of credibility, but upon the woeful lack of the required substantiation for expenses underlying some of their claimed deductions.

We have considered all of the parties' arguments, and to the extent not discussed above, conclude that those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.